JAMES SPRUNT BENEVOLENT TRUST, JAMES LAURENCE SPRUNT, LOUIS E. HALL, EDWARD JENNER WOOD, WILLIAM H. SPRUNT, AND WALTER P. SPRUNT, TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 30966, 35016.   Promulgated June 2, 1930.

*J. Marvin Haynes, Esq.*, for the petitioner.
*L. A. Luce, Esq.*, and *F. L. Van Haaften, Esq.*, for the respondent.

20

OPINION.

Smith: The petitioner contends, first, that it is exempt from taxation under section 231 of the Revenue Act of 1921. This section reads in part as follows:

That the following organizations shall be exempt from taxation under this title—

*      *      *      *      *      *      *

(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private stockholder or individual.

The respondent, relying upon certain *dicta* in *James D. Williamson et al.*, 7 B. T. A., 1033, contends that the petitioner is neither a corporation, community chest, fund, or foundation, but that it is a " trust " and is therefore not entitled to exemption under the above quoted section of the statute. We are of the opinion that there is no merit in this contention. Manifestly, a fund or foundation may be a trust. If the trust is organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, and no part of the net earnings of such trust inures to the benefit of any private stockholder or individual, the trust is exempt under section 231 (6) of the Revenue Act of 1921. The mere fact that the fund or foundation takes the form of a trust does not bar it from exemption.

We are of the opinion, however, that the petitioner's claim for exemption must be denied upon the broader ground that the trust here was not organized exclusively for religious, charitable, scientific, literary, or educational purposes within the meaning of the statute. The primary and principal purpose of the trust as plainly expressed by the creator was " for the temporal support of a son or grandson or a blood relation who will be called to the Gospel Ministry of the Southern Presbyterian Church." Article 14 of the trust authorizes the trustees to pay out not exceeding one-fifth of the increment of the trust fund " for the private relief or assistance of any worthy lineal descendants of Alexander Sprunt and Jane Dalziel Sprunt regardless of their church affiliations." The authorities, which we have reviewed at length, seem unanimously to agree that purposes such as these are not public charities in a legal sense and are not entitled to the privileges, such as exemption from taxation, generally accorded such charities. " *   *   * A gift for ' the support of those of my children and their descendants who may be destitute,' is not a charity." Perry on Trusts and Trustees, vol. 2, p. 1163. " *   *   * Charity is generally defined as a gift for public use. Such is its legal meaning. *   *   * " *Kain* v. *Gibboney*, 101 U. S. 362. " *   *   * A charity is a gift to a general public use, which extends to the rich, as well as to the poor. *   *.   * " *Perin* v. *Carey*, 24 How. 465.

The benefits conferred by the first and fourteenth articles of the trust under consideration were available only to the creator's blood

relations. This, we think, was a private use. It excluded the public. This, we think, bars the petitioner from exemption from income tax under section 231(6) of the Revenue Act of 1921.

The petitioner further contends that if it is not exempted from taxation under section 231, then it is entitled under sections 219(b) and 214(a)(11) of the 1921 Act to deduct certain amounts permanently set aside for religious, charitable, and educational purposes in each of the taxable years, as follows:

1. For Relief of Underpaid Presbyterian Ministers or Missionaries of Wilmington Presbytery (Article 13 of the trust) _____ $3,500
2. For First Presbyterian Church of Wilmington, North Carolina, to be used for the Kiang Yin China Mission Station of that church. Payments of $10,000 are to be made yearly for 20 years after the death of the creator (Article 15 and Codicil) _____ 200,000
3. For First Presbyterian Church of Wilmington, North Carolina, for Marion Sprunt Mission Kindergarten at Delgado. Payments of $1,200 are to be made yearly for 5 years after death of creator (Article 16) _____ 6,000
4. For Davidson College, Davidson, North Carolina (Article 17) _____ 50,000
5. For First Presbyterian Church of Wilmington, North Carolina, for religious, benevolent and local work of that church. Payments of $10,000 are to be made yearly for 20 years after death of creator (Codicil) _____ 200,000
6. Trustees' Honorarium (Article 18) _____ 1,200

The respondent denies that the amounts in question were paid or permanently set aside within the meaning of the statute during the taxable years 1922 and 1923.

It will be seen that the disputed amounts fall into two classes. Those which, under the provisions of the trust agreement, were to be paid yearly beginning after the death of the creator, including items 2, 3, and 5 above, and those that were payable yearly or immediately upon creation of the trust or at the discretion or convenience of the trustees, including items 1, 4, and 6.

The amounts comprising the first and principal group are, we think, not deductible. None of them was paid or permanently set aside during the taxable year by the trustees. The petitioner argues, however, that the amounts were permanently set aside by the trust instrument itself and are deductible independently of any of the acts of the trustees. We do not so construe the statute and the trust agreement. In the first place, the annual payments to the First Presbyterian Church for the Kiang Yin China Mission Station (article 15), the Marion Sprunt Mission Kindergarten (article 16), and for local religious and benevolent work (codicil) were not directed or authorized to be made until after the death of the creator. This did not occur until the year 1924. The payments were to extend over a number of years and were to be made out of the increment of

the trust fund if possible. The creator of the trust did not direct, and there is nothing to indicate that he contemplated, that the total or any part of these amounts should be set aside at a time prior to the year in which they should become payable. No segregation of the corpus of the trust fund was directed by the creator but all of the benefits were to be paid out of the increment of the entire fund if possible (article 9).

In this contention the petitioner relies upon *Herbert Jermain Slocum et al., Executors*, 6 B. T. A. 36. That case, however, presented an entirely different situation. The testator there had directed in his will that all of his residuary estate be paid to certain charities. In holding that the income during process of administration of such residuary estate was exempt, we said:

We think that Congress intended by subdivision (b) of section 219 that all or any portion of the gross income of an estate should be deductible when, conformable to and in pursuance of the provisions of the will, it was appropriated and dedicated finally and for all time to charitable and religious uses as specified in section 214 (a) (11), so that, thereafter, there would be no change which would destroy the character of such action. The executors were charged by the will with the duty of apportioning the residuary estate among the charitable, religious, and educational institutions as specified in the will after the payment of all specific legacies, expense of administration, etc. * * *

* * * * * * *

* * * The will directed that the residuary estate " wheresoever and whatsoever" be distributed to the exempt institutions. When the executors received the income it became a part of the residuary estate and was permanently set aside for and belonged to the exempt institutions. It was, therefore, a proper deduction by the estate.

All of the trust fund here was not, under the provisions of the trust instrument, " appropriated and dedicated finally and for all time to charitable and religious uses as specified in section 214(a) (11)" and in the absence of any authorized act on the part of the trustees it can not be determined what part, if any, of the income of the trust fund was permanently set aside for such uses.

In the other group are items 1, 4, and 6 above, including the amounts credited in the trust ledger for relief of underpaid Presbyterian ministers and missionaries, for Davidson College, and for trustees' compensation. These items, we think, are deductible. The trustees were authorized to make these payments during the taxable years. Pursuant to such authorization, they set up the amounts to be paid in the trust ledger to the credit of the beneficiaries named. These book entries were made at the close of the taxable years 1922 and 1923, the total of the amounts set up in each year being several hundred dollars less than the interest accrued on the principal fund. It seems to us that it was an expedient if not necessary course of action on the part of the trustees, and a reasonable exercise of their discretionary powers, to set aside in this manner out of the increment

of the fund these amounts for future payment. The trust accounts were kept on the accrual basis. The fact that there was no actual segregation of the amounts in question but that they were allowed to remain in the hands of the custodian of the principal fund as interest-bearing loans does not establish that they were not permanently set aside, but rather indicates that they were. The statute is not specific in this requirement. It is sufficient, we think, that the amounts remain readily identifiable and subject to immediate appropriation to their respective uses as authorized by the trust instrument.

The $200 per year compensation payable to each of the trustees was an ordinary and necesssary expense of the trust, and since the trust books were kept on the accrual basis the amounts are deductible in the taxable years.

. The respondent in determining the deficiencies herein asserted computed the petitioner's tax liability at the surtax rates only, upon the theory that the trust income consisted of dividends from the corporation. At the hearing had in these proceedings the respondent, on motion granted, moved to increase the deficiencies for each of the years on the ground that the evidence adduced establishes that the petitioner's income was derived from interest rather than from dividends and is, therefore, taxable at both the normal and surtax rates. The facts conclusively support the respondent's contention in this respect and the recomputation should be made in accordance therewith.

*Judgment will be entered under Rule 50.*