EMERIT E. BAKER, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 92366, 94401. Promulgated September 13, 1939.

*Valentine Pearson,* C. P. A., and *Francis J. Dwyer,* C. P. A., for the petitioner.

*Gerald W. Brooks, Esq.,* for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in petitioner's income and excess profits tax for 1934, 1935, and 1936, as follows:

| Docket No. | Year | Income tax | Excess profits tax |
|---|---|---|---|
| 92366 | 1934 | $377.45 | $74.75 |
| Do | 1935 | 2,851.96 | 934.48 |
| 94401 | 1936 | 339.15 | |

The principal facts have been stipulated.

The petitioner was organized as a nonprofit corporation under the laws of the State of Illinois (see chapter 32, § 159, Cahill's Illinois Revised Statutes, 1931) on December 15, 1924. Its principal organizer, Emerit E. Baker, was the founder and major stockholder of the Kewanee Boiler Co., of Kewanee, Illinois. The purposes for which the petitioner was organized are set forth in its articles of incorporation, as follows:

2. The object for which it is formed is to use its property, funds and income for any or all of the following purposes: To establish, build, improve and maintain parks, public grounds, public buildings, public baths and play grounds, and contribute to the support of any of the foregoing described projects or institutions; to help and aid crippled children; to render financial aid to worthy young people seeking an education; to receive and accept gifts, bequests and devises. * * *

In addition to the objects and purposes stated in the articles of incorporation, the bylaws provided:

* * * to render financial aid to corporations and institutions which have for their purpose the care of the sick and injured, providing for recreation and athletic games, or the development of the minds and bodies of the boys and girls in the city of Kewanee; to render financial aid to the needy and aged workers and their families; to aid the Public Library of Kewanee, Illinois; to

support musical concerts, and public lectures upon useful subjects; to contribute to the Community Chest fund of Kewanee, Illinois; and to support and render financial aid to any institution, corporation or movement which, in the judgment of the Board of Directors, has for its purpose the improvement and betterment of the people of Kewanee, Illinois; to receive and accept gifts, bequests, and devises.

Emerit E. Baker and six of his associates, who were also named as organizers in the articles of incorporation, were appointed directors. The directors served without compensation except for one, who acted as secretary of the corporation and received a salary of $1,000 a year. Petitioner had no issued stock. Its only assets were 2,088 shares of the common stock of the Kewanee Boiler Co., which were transferred to it by Emerit E. Baker on January 12, 1925. During the years 1925, 1926, 1928, and 1929 those shares of stock were converted into cash in the total amount of $602,584.49.

Petitioner's operations were conducted strictly in accordance with the declared purposes for which it was organized until January 1, 1929. On that date Emerit E. Baker died, leaving a will in which he appointed the petitioner executor and trustee of his residuary estate. The will provided in clause sixth, after making certain provisions for testator's wife, as follows:

SIXTH: I give, devise and bequeath unto the Executors and Trustees hereinafter named, all the rest, residue and remainder of my estate and property of all kinds wheresoever situated, in trust, nevertheless, for the following uses and purposes:

(a) To pay the sum of Twelve Thousand Dollars ($12,000.00) per year in quarterly installments in advance to my wife, Jennie H. Baker, as long as she shall live. This annual payment to my wife shall be a first charge on the entire residue of my estate and shall be taken out of the income of my estate if the same is sufficient for that purpose. If at any time such income should prove insufficient for that purpose, then so much of the principal as may be necessary from time to time shall be used for such payment.

(b) If at the time of my death I shall be paying all or part of the expenses of any pupils in school, such payment is to continue until the graduation of such pupils, provided that in the opinion of the Executors and Trustees named herein they are worthy.

(c) If for any reason the payments hereinbefore provided for should not wholly or in part require all of the income from my property, it is my desire and I hereby direct that my said executors and trustees shall use any unexpended portion of the income from my property for the benefit of the said City of Kewanee and its inhabitants by way of establishing or improving the parks or public grounds, or constructing or aiding in the construction of, or contributing to the support of public buildings and institutions, or public baths or play grounds of said city; also to help and aid crippled children, and also to assist young people to obtain an education, as my said trustees and executors in their discretion shall deem best, and upon the death of my said wife my said trustees and executors shall use the entire residue and remainder of my said estate for the purposes of this clause mentioned. Said trustees may establish a permanent fund, the income from which to be used as herein directed.

(d) It is my wish that my estate and property be used for local purposes and especially for the people of Kewanee, and not to be used otherwise except in case of a state or national calamity. I am especially friendly to St. Francis Hospital in Kewanee because of the good they have done the citizens of Kewanee in the past, and wish them to be given from time to time such sums as my trustees and executors think proper. I am also interested in the helping of crippled children, and desire my trustees to be liberal in their support of that cause. I wish that such part of my estate and property as the trustees may think wise be used for educational purposes, preferably for the children of employees of Kewanee Boiler Company in the High Schools or in higher schools and and colleges if my trustees and executors think best. If any of the funds be used for this higher education I wish that it be used only with the children who have shown a disposition to work, as I have a great deal of faith in the plodder and very little in the genius.

I wish so much of my property and estate as my wife shall direct be used in the education of her nieces and nephews, and I especially wish her niece, Janet Hill, to receive the help that may be necessary to complete her education, the manner of doing this to be approved by my wife.

*      *      *      *      *      *      *

(h) I wish none of my estate or property to be used in the building or support of churches or of sectarian schools, unless such schools are intended for the benefit of orphans or poor children who otherwise would not receive an education.

(i) If at any time the income from the estate is not enough to provide for these payments, I wish the principal to be spent as liberally as is approved by my executors and trustees.

Clause seventh of the will provided in part:

SEVENTH: I hereby nominate and appoint EMERIT E. BAKER, INC., a corporation organized under the laws of the State of Illinois, to be the executor of this Will and the Trustee of my residuary estate, and I hereby give to and invest it and its successors in trust with such powers over and such title and estate in and to the property in this Will devised and bequeathed as may be necessary and convenient to carry into full effect my intentions and designs in the execution of this Will, and in the several devises, donations and legacies herein specified and made; * * *

After probate of the decedent's will, which occurred on February 4, 1929, petitioner's charter was amended on July 7, 1930, to read as follows:

2. The object for which it is formed is to use its property, funds and income for any or all of the following purposes: To establish, build, improve and maintain parks, public grounds, public buildings, public baths and play grounds, and contribute to the support of any of the foregoing described projects or institutions; to help and aid crippled children; to render financial aid to the worthy young people seeking an education; to render financial aid to corporations and institutions which have for their purpose the care of the sick and injured, providing for recreation and athletic games, or the development of the minds and bodies of the boys and girls in the City of Kewanee; to aid the needy and aged workers and their families; to aid the Public Library of Kewanee. Illinois; to support musical concerts and public lectures upon useful subjects; to contribute to the Community Chest fund of Kewanee, Illinois; and to support and render financial aid to any institution, corporation or movement

which, in the judgment of the Board of Directors, has for its purpose the improvement and betterment of the people of Kewanee, Illinois; to receive and accept gifts, bequests and devises.

Decedent's widow, Jennie H. Baker, in lieu of asserting her dower rights to which she was entitled under the laws of the State of Illinois, agreed to accept an annual payment of $19,200 which was $7,200 in excess of the annual payment provided for in the will. The date of birth of Jennie H. Baker was September 29, 1861.

Assets of the decedent's residuary estate of a total value of $1,385,-509.82 were transferred to the petitioner by the administrators in 1930, 1931, and 1932. These assets belonging to the residuary estate and the assets which had been transferred to the petitioner by the decedent in his lifetime were commingled by the petitioner and handled as a single fund. It is stipulated that "No segregation as to income or disbursements of Emerit E. Baker, Inc., and the Estate of Emerit E. Baker was made."

Income received by the petitioner from all sources and the disbursements made from all of the assets in its possession from petitioner's inception to December 31, 1937, were as follows:

| Year | Income | | | |
|---|---|---|---|---|
| | Total | From investments | From student loan repayments | Other |
| 1925 | $11,754.00 | $11,754.00 | | |
| 1926 | 29,084.00 | 29,004.00 | $80.00 | |
| 1927 | 18,418.00 | 18,418.00 | | |
| 1928 | 15,902.50 | 15,522.50 | 380.00 | |
| 1929 | 18,352.13 | 18,112.13 | 240.00 | |
| 1930 | 17,359.42 | 16,787.30 | 570.00 | $2.12 |
| 1931 | 16,937.80 | 15,000.85 | 1,876.95 | 60.00 |
| 1932 | 54,483.56 | 51,728.32 | 2,296.24 | 459.00 |
| 1933 | 47,327.31 | 45,320.56 | 1,976.75 | 30.00 |
| 1934 | 43,756.16 | 41,739.66 | 2,016.50 | |
| 1935 | 42,290.68 | 36,082.88 | 6,207.80 | |
| 1936 | 63,664.23 | 57,880.98 | 5,774.25 | |
| 1937 | 45,990.67 | 37,634.93 | 8,355.74 | |
| Total | 425,320.46 | 394,995.11 | 29,774.23 | 551.12 |

| Year | Distributions | | | | | | |
|---|---|---|---|---|---|---|---|
| | Total | Kewanee Park district | Student loans | Donations | Interest and expenses | Payments to widow | Nieces and nephews |
| 1925 | $54,947.66 | $42,500.00 | $2,750.00 | $8,381.18 | $1,316.48 | | |
| 1926 | 48,132.48 | 28,395.00 | 8,820.15 | 8,520.66 | 2,396.67 | | |
| 1927 | 27,805.40 | 3,000.00 | 12,205.15 | 11,580.00 | 1,020.25 | | |
| 1928 | 53,538.97 | 22,000.00 | 18,689.40 | 10,625.00 | 2,224.57 | | |
| 1929 | 81,980.09 | 12,000.00 | 19,591.80 | 38,981.63 | 3,850.59 | $7,272.82 | $283.25 |
| 1930 | 228,498.81 | 108,000.00 | 26,977.22 | 73,288.37 | 2,463.09 | 16,270.40 | 1,499.73 |
| 1931 | 201,202.65 | 86,662.40 | 45,141.18 | 44,956.77 | 3,125.50 | 19,204.80 | 2,112.00 |
| 1932 | 217,750.87 | 93,108.75 | 58,169.39 | 37,101.95 | 7,731.98 | 19,263.80 | 2,375.00 |
| 1933 | 137,569.67 | 16,065.05 | 47,193.19 | 45,370.44 | 6,210.78 | 19,474.99 | 3,255.22 |
| 1934 | 122,933.81 | 27,481.64 | 32,152.01 | 35,918.76 | 5,233.40 | 19,223.00 | 2,925.00 |
| 1935 | 99,606.69 | 11,000.00 | 26,832.84 | 31,331.66 | 9,077.19 | 19,200.00 | 2,165.00 |
| 1936 | 86,404.90 | 15,840.00 | 20,500.67 | 25,286.05 | 3,832.58 | 19,200.00 | 1,745.00 |
| 1937 | 93,774.52 | 30,510.52 | 16,180.00 | 23,237.44 | 3,975.56 | 19,200.00 | 671.00 |
| Total | 1,454,146.52 | 496,563.36 | 335,203.00 | 394,580.51 | 52,458.64 | 158,309.81 | 17,031.20 |

The student loans were all secured by promissory notes payable to petitioner six years from date, with interest at 6 percent per annum from the date of maturity. In keeping its books petitioner charged the loans to expenses in the years when made and repayments of the loans were accounted for as income in the years when received. Petitioner's books and accounts were kept on the cash receipts and disbursements basis. In determining the deficiencies herein the respondent has restored to income each year the net amount of the loans charged off, that is, the excess of loans made over the repayments received in each year.

Petitioner filed income and excess profits tax returns for the years 1934, 1935, and 1936, but each of the returns showed no taxable income. Petitioner's 1934 return showed a net loss of $27,390.44. The respondent in his deficiency notice restored to income of that year $30,135.51 of bad debts charged off in respect of the student loans, and made no further adjustments. Petitioner's 1935 return showed a net loss of $5,896.59, while the respondent determined a net income of $20,741.54, after disallowing $20,457.20 of bad debts claimed in respect of the student loans, and $6,180.93 claimed as a loss on bank deposits in closed banks. Likewise, a net loss of $10,910.61 was reported by the petitioner in its 1936 return, while the respondent by disallowing $14,726.42 of bad debts charged off determined an income of $3,815.81.

In these proceedings the petitioner protests the disallowance of the bad debt deductions in all three of the years involved and further contends that it is a tax exempt corporation under the provisions of section 101 (6) of the Revenue Acts of 1934 and 1936. This provision of the statute reads as follows:

(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.

Respondent contends that the petitioner fails to qualify as an exempt corporation by reason of the fact that in all of the years involved it was obligated to make and did make annual payments to Jennie H. Baker, widow of Emerit E. Baker, and other payments for the educational expenses of her nieces and nephews, and therefore was not operated exclusively for the purposes specified in the statute.

There can be no doubt, and apparently the respondent does not contend otherwise, that the objects and purposes for which the petitioner was organized meet the requirements of the statute for exemption from tax. They were purely charitable and educational.

Their charitable nature was not in any way affected by the charter amendment in 1930. However, to qualify as an exempt corporation a taxpayer must meet a twofold test. It must be both organized and *operated* for the purposes specified in the statute. *James Sprunt Benevolent Trust*, 20 B. T. A. 19; *Berkeley Hall School, Inc.*, 31 B. T. A. 1116. Trusts or corporations organized and operated for the benefit of the donor's relatives or in general for personal and private purposes rather than for public charities are not within the statute. See *James Sprunt Benevolent Trust, supra; Henry C. DuBois*, 31 B. T. A. 239. Was the petitioner here *operated* exclusively for the purposes set forth in the statute?

Before ruling upon this question it might be well to point out certain facts which, possibly, give rise to a procedural or jurisdictional question not raised in the pleadings.

Both the petitioner and the respondent have regarded the petitioner as the beneficial owner of the assets of the residuary estate of Emerit E. Baker. It is stipulated that the assets of the residuary estate were commingled with petitioner's previously acquired assets. The deficiencies involved are the petitioner's corporate and excess profits taxes and they were determined on the basis of corporation income and excess profits tax returns for 1934, 1935, and 1936, in which petitioner reported as income the earnings from all of the property in its possession, including the assets of the residuary estate.

It is plainly evident from the terms of the decedent's will, however, that he intended his residuary estate to be held and administered as a trust estate, at least until the death of his wife. The will so provided in clause sixth, subdivision (c) above, and further provided that "upon the death of my said wife my said trustees and executors shall use the entire residue and remainder of my said estate for the purposes in this clause mentioned."

There is a serious question, we think, whether the petitioner corporation and the residuary trust did not constitute separate tax entities during the taxable years before us, the petitioner operating under its corporate charter with respect to the assets originally transferred to it by the decedent in 1925 and as trustee in respect of the assets comprising the decedent's residuary estate which were transferred to it by the administrators in 1930, 1931, and 1932. Petitioner suggests in its brief that it is not impossible at this time to make such a segregation of the assets and points out that in such event the petitioner as a separate corporate entity would clearly be exempt from tax under the statute, since its organization and its operations outside of the activities incident to the administration of the trust estate were obviously within the statute, and that as trustee of the residuary estate

petitioner would have no tax liability for the years involved, since in each year it made expenditures of trust income and corpus, which would be deductible under section 162 of the Revenue Acts of 1934 and 1936, in excess of the trust income (see statements of income and expenditures set out above).

While petitioner was prohibited under the laws of the State of Illinois from acting in the capacity of executor of the will of Emerit E. Baker, as ruled by the probate court, it apparently acted as trustee of decedent's residuary estate.

The question raised, however, is not vital to our disposition of the proceedings before us, since in any event we are of the opinion that the petitioner qualifies as an exempt corporation with respect to the administration of the assets of the residuary estate as well as the conduct of its strictly corporate activities. Petitioner's only activity during the taxable years which was not strictly of a charitable or educational character was the payment of the allowance to the decedent's widow and the educational expenses of her nieces and nephews. We do not think that that alone defeats its classification as an exempt corporation under the statute. The payment of these amounts was merely incidental to and was a means of furthering the charitable and educational purposes for which the petitioner was organized. It was in no sense a part of its corporate activities. The payments made to the widow and nieces and nephews were a charge not upon the petitioner's net earnings but against the entire corpus of the residuary estate.

In *Lederer* v. *Stockton*, 260 U. S. 3, the Supreme Court held that the income received by a hospital from property devised to it subject to certain annuities was exempt from tax under the provisions of section 11 (a) of the Income Tax Law of 1916 (Comp. Stat., § 6336k), saying:

This residuary fund was vested in the Hospital. The death of the annuitant would completely end the trust. For this reason, the trustee was able safely to make the arrangement by which the Hospital has really received the benefit of the income subject to the annuity. As the Hospital is admitted to be a corporation, whose income when received is exempted from taxation under section 11 (a), we see no reason why the exemption should not be given effect under the circumstances. To allow the technical formality of the trust, which does not prevent the Hospital from really enjoying the income would be to defeat the beneficent purpose of Congress.

The statutory provisions of the earlier act granting the exemption from tax of the income of charitable organizations are the same in general purpose and substantially the same in form, so far as material here, as those of the 1934 and 1936 Acts. Even assuming that the beneficial interest in the funds of the decedent's residuary estate was vested in the petitioner corporation when turned over to it by the

administrators, subject only to the annuity payments to the widow and the payments to the nieces and nephews, petitioner would be exempt from tax under the ruling of the Court in *Lederer* v. *Stockton, supra.*

Holding as we do that the petitioner is an exempt corporation under section 106 above, it is not necessary to decide the other issues relating to specific deductions.

*Decisions of no deficiencies will be entered.*