Pasadena Methodist Foundation v. Commissioner. Carrie A. Maxwell Trust, Pasadena Methodist Foundation, Trustee v. Commissioner.
Pasadena Methodist Found. v. Commissioner
Docket Nos. 109667, 109668.
United States Tax Court
1943 Tax Ct. Memo LEXIS 87; 2 T.C.M. (CCH) 905; T.C.M. (RIA) 43451; October 11, 1943
*87 Maynard J. Toll, Esq., 433 S. Spring St., Los Angeles, Calif., for the petitioners. Alva C. Baird, Esq., and Earl C. Crouter, Esq., for the respondent. TURNER
Memorandum Findings of Fact and Opinion TURNER, Judge: The respondent has determined against the petitioner Pasadena Methodist Foundation, deficiencies in income taxes for the years 1939 and 1940 in the respective amounts of $60.20 and $55.69, and penalty in the amount of $15.05 for 1939, for failure to file an income tax return within the period prescribed by law. He has determined against the petitioner, Carrie A. Maxwell Trust, Pasadena Methodist Foundation, Trustee, a deficiency in income tax for the year 1940 in the amount of $140.81. The only question presented is whether each of the petitioners is exempt from Federal income tax under section 101 (6) of the Internal Revenue Code. Findings of Fact Pasadena Methodist Foundation The Pasadena Methodist Foundation is a California corporation with its principal office in Pasadena, California. It filed no timely income tax return for 1939 but on February 4, 1941, did file a return in the 6th District of California, reporting receipt of $490 for membership dues, a deduction *88 of $24.69 and a net income of $465.31. On the face of the return appears this statement: Pasadena Methodist Foundation does not deem itself to be subject to taxation, but is filing this return solely for the purpose of giving the Treasury Department information with regard to its activities. In the year 1940, the petitioner filed a timely return in the 6th District of California reporting membership dues of $375 and a net income of $344.13. The statement quoted above also appears on the face of that return. The petitioner was incorporated under section 606 of the Civil Code of the State of California on or about March 23, 1939, as a nonprofit corporation. Its articles of incorporation state that it is organized "solely for general charitable and eleemosynary purposes", and that it "shall have as its objectives the aid, promotion and development of religious, charitable and educational activities; the aid of the old and indigent; the giving of assistance in the education to youth; the aiding of the program and the activities of the Methodist Church." The corporation is governed by a board of fifteen trustees, each serving for a term of three years and successor trustees are elected *89 by the board, "subject to the approval of the official board of the First Methodist Episcopal Church of Pasadena, California." Only members of a Methodist church are eligible to serve as trustees. The petitioner was formed to serve as an adjunct to the First Methodist Church in Pasadena, in order to carry on certain activities and receive certain contributions which were generally regarded as for the benefit of the church. It was felt that the church itself probably could not handle such matters. The Foundation's activities, functions and decisions have been undertaken, guided and made in very close cooperation with the governing board of the church and its ministers. During that portion of the year 1939, after petitioner's incorporation, and during the years 1940 and 1941, inclusive, it received a total of $1,475 of membership dues, and received donations aggregating $1,055.11, all free from restrictions as to use. These moneys have been carried as a general fund and investment costs in connection with the trust, miscellaneous expenses and promotional expenses have been paid therefrom. The general fund balance at the end of 1942 was $2,162.08. On December 29, 1939, the petitioner *90 entered into a trust agreement with Carrie A. Maxwell, from whom it received as trustee a sum of $100,000 in connection with the Carrie A. Maxwell Trust mentioned herein below. It acted as trustee under a trust agreement with Amy Hutchison Crellin, who entered into a trust with petitioner on December 27, 1939, setting up a trust first for the education of certain relatives and then, if there were sufficient funds available, to assist young members of the church in obtaining an education. The petitioner also became trustee of the sum of $265 under a trust certificate approved by Hannah Seaberg, the trustor, June 19, 1939. Hannah Seaberg is an elderly woman who had had need of assistance from the welfare department of the church. The trust certificate provides that the net income and such part of the principal as petitioner shall deem proper shall be paid to her during her life and that upon her decease and the payment of the expenses of her last illness and funeral, the balance of the funds shall be paid to the church for use in its religious and benevolent work or for such other purposes as the church may deem proper. The trust then terminates. The funds were on June 19, 1939, and *91 still are, deposited in a bank savings account. Five dollars have been distributed to Hannah Seaberg from accumulated interest, and the small balance is still held in trust. One of the purposes of handling the money for Miss Seaberg was to safeguard it for her. On June 7, 1941, petitioner also entered into a written agreement with H.G. and Ina D. Warren, reciting that the Warrens had conveyed to the petitioner certain real property, subject to a reservation of a life estate in themselves, and thereafter the income therefrom is to be used by and for the Methodist Church and the Foundation. Petitioner has not yet received any income from the property. In 1942, petitioner received a gift from Mr. and Mrs. I. J. Reynolds, of 5,000 shares of the Royal Laundry and Dry Cleaning Company, which operates at Pasadena, subject to a life estate in Mr. and Mrs. Reynolds or the survivor of them. The value of the said stock is unknown and the petitioner has not yet received any income therefrom. Subject to the life estate, no restriction was imposed on petitioner by the grantors with respect to the use of this property or the income therefrom. The petitioner operated as a trustee with respect *92 to the separate funds according to the instruments by which they are controlled. Petitioner has received no fees in performing the duties of trustee for the respective trusts. No part of the income of petitioner inured to the benefit of any of its members nor any designated individuals. No part of petitioner's activities is that of carrying on propaganda or otherwise attempting to influence legislation. Carrie A. Maxwell Trust The Carrie A. Maxwell Trust of which the Pasadena Methodist Foundation is trustee, has its principal office in Pasadena, California. On December 29, 1939, Carrie A. Maxwell entered into a trust agreement with the Pasadena Methodist Foundation, turning over to the said Foundation $100,000. The purpose of the trust was to aid Dr. Merle N. Smith, the retired pastor of the First Methodist Church of Pasadena, by providing for a retirement pension of $416.66 per month, beginning January 1940, and upon his death, to pay to his wife, if she survives him, $208.33 per month during her lifetime. The agreement provided that after paying the necessary expenses, taxes and the foregoing retirement payments, any remaining funds of the net income is to be expended to the extent *93 of one-half, in order to restore any of the principal used in making the aforesaid payments, and the rest of such income is to be used for the care and maintenance of the organ and for the musical program of the church. The agreement further provided that if the church should cease its corporate existence, then any principal of the funds or any unexpended income therefrom should, upon demand, be paid to Carrie A. Maxwell, if living, or to her trustees. By a supplemental agreement dated June 24, 1941, between the same parties, the above-mentioned stipulation was amended to provide that in the event of termiation of the church, the income should be used for such religious and charitable purposes as the trustees of the Foundation should designate, but in no event for other than such purposes. By a judgment of the Superior Court of the State of California in and for the County of Los Angeles, dated March 31, 1943, it was ordered, adjudged and decreed that the trust agreement be reformed "as and from the date of its inception on the 29th day of December 1939" to include the sentence, "The trust hereby created shall be irrevocable." From investments made by the petitioner of the principal, *94 the income therefrom in 1940 aggregated $3,312.10. During that year, there were annuity payments to Dr. Smith of $4,999.92. That same amount was paid to Dr. Smith in each of the years 1941 and 1942. The corpus was invaded to the extent of $1,687.82 in 1940, $627.01 in 1941, and $308.83 in 1942. Mrs. Maxwell wished to create a trust fund which would produce an income of $5,000 a year. Dr. Smith had served as pastor of the Methodist Church in Pasadena from 1916 to 1937. It is unsual for a pastor to serve one church for such a length of time in a Methodist Conference. He received an annual salary ranging from $7,800 in 1922 to $9,000 in 1931. His salary in 1932 and 1933 was $7,500 and from 1934 through 1937 was $6,500. During the early part of his pastorate, he looked after the financing and constructing of a new church building at the cost of $1,000,000. He suffered a physical breakdown and was granted a leave in order to regain his health which he never regained completely, and in 1937 retired from active duty. During his retirement, he has received allowances from the various conferences in which he had previously served, the amounts ranging from $623 in 1937 to $712 in 1942. Mrs. *95 Smith had been extremely active in the church, teaching Sunday School, and acting as an officer in the women's societies, missionary societies and participating in other church work. At the time of the creation of the trust, Dr. Smith's life expectancy, according to the Standard Mortality Tables, was ten years, and Mrs. Smith's life expectancy was eight years. At that time he was sixty-seven years of age and she was seventy-one. Carrie A. Maxwell has been an active member of the First Methodist Church of Pasadena for a number of years. She has frequently contributed substantial amounts to the church. She and her husband (since deceased) donated the organ, at an approximate cost of $52,000, for the new church and $10,000 toward the general building fund. In 1936 she provided the church with a parsonage, subject to a life estate in favor of Dr. and Mrs. Smith. Since 1938 she has contributed $2,500 annually toward the current expenses. She has always been interested in the musical program of the church and recently she gave to the church a complete set of choir robes at a substantial cost. There was no legal obligation on the part of the church, or the Foundation, to support Dr. Smith *96 after his retirement. Pursuant to stipulation at the hearing, the findings and opinion of the Board of Tax Appeals in Amy Hutchison Crellin, Petitioner, v. Commissioner of Internal Revenue, Respondent, Docket No. 106839, and Amy Hutchison Crellin Trust, Pasadena Methodist Foundation Trustee, Petitioner, v. Commissioner of Internal Revenue, Respondent, Docket No. 109669, reported at 46 B.T.A. 1152, are considered as a part of the record in the instant case. No part of the activities of the trust is that of carrying on propaganda or otherwise attempting to influence legislation. A fiduciary income and defense tax return for 1940 was filed by the Pasadena Methodist Foundation, Trustee, with the Collector for the 6th District of California, reporting a net income of $3,312.10. There was a discrepancy in the figures on the petitioner's return, and the correct amount of the net income is $3,300.31. On the face of the return is the following statement: Pasadena Methodist Foundation does not deem itself to be subject to taxation, but is filing this return solely for the purpose of giving the Treasury Department information with regard to its activities. *97 Opinion The question presented in the two cases is whether or not the petitioners come within the exemption from the payment of income taxes under the provisions of section 101(6) of the Internal Revenue Code. [1]
The respondent has determined that petitioner Pasadena Method Foundation is not exempt because it was not organized and operated exclusively for charitable, religious or educational purposes and that its income inured to the benefit of individuals. Petitioner was organized under the laws of the State of California, and it is clearly an eleemosynary corporation, incorporated *98 for charitable, religious and educational purposes. No officer or member of the Foundation receives any compensation or profit, nor is it organized to serve designated individuals. One of its objects is to aid the First Methodist Church of Pasadena in carrying on some of its activities, yet the objects of the Foundation are really broader than that, for under its articles of incorporation its charitable, religious and educational activities are not restricted to those of that particular church. The funds petitioner has received as its own consist of dues, donations and gifts, paid and given to it without any restriction as to their use, other than carrying out the purposes for which it was organized. If the petitioner's activities are no more than as defined, it is clearly exempt from the payment of income taxes. The respondent, however, contends that petitioner has other activities which prevent it from enjoying the privileges of the exemption. He cites petitioner's services as trustee for three trusts and that it had accepted two gifts, one of realty and the other of personalty, in which the donors had retained life estates. The petitioner is administering the three trusts for *99 the benefit of private individuals during their lives, but it is doing so for the ultimate purpose of receiving the trust funds, after the demise of the individuals, in order to have funds with which to carry out its purposes or to aid the Methodist Church in some of its activities. In Unity School of Christianity, 4 B.T.A. 61, we held that a corporation otherwise exempt from tax is not deprived of exemption because it carries on profitable or competitive activities in furtherance of its predominant religious, charitable, scientific or educational purpose. This decision was based on the Supreme Court's opinion in Trinidad v. Sagrada Orden De Predicadores, 263 U.S. 578. There it was held that an eleemosynary corporation, in engaging in a business pursuit, where the income was used for religious, charitable and educational purposes, was not deprived of the exemption from paying income taxes. In a later case, Emerit E. Baker, Inc., 40 B.T.A. 555, the Board of Tax Appeals held that a corporation otherwise exempt from income tax under section 101(6) of the Revenue Acts of 1934 and 1936 is *100 not deprived of exemption because of payments of annuities to a donor's widow and of payments for the education of her nieces and nephews pursuant to the will of the donor. This decision was based on the opinion of the Supreme Court rendered in the case of Lederer v. Stockton, 260 U.S. 3, which holds that a hospital was not liable for tax on income it had received from property, devised to it but subject to the payment of certain annuities, and which was loaned to the hospital by the trustee who took security for the payment of sufficient interest to satisfy the last remaining annuity. In the light of the reasoning of those cases, we cannot see that petitioner's services as trustee, without compensation, for the three trusts, during the lives of the beneficiaries, when the corpora and the income therefrom will ultimately go to religious, charitable or educational purposes, should deprive it of the exemption to which it is otherwise entitled. With respect to the gifts to petitioner, in which the donors have reserved unto themselves life estates, we do not find any activity on the part of petitioner in administering either the properties or the incomes *101 therefrom. However, if petitioner were administering the properties during the existence of the life estates, it would be doing no more than we have found it is doing in handling the three trusts. When the life estates terminate, the properties and their incomes are to be used by petitioner for religious purposes. If such activity does not deprive petitioner of the exemption of the statute, then the inactivity of petitioner should not. Certainly the mere acceptances of the gifts are not such activities on the part of petitioner that should cause its otherwise nontaxable income to become taxable. The respondent therefore is in error in determining petitioner Pasadena Methodist Foundation liable for income taxes for the years 1939 and 1940, and as there is no liability there is, also, no penalty for failure to file a return within time for 1939. With respect to petitioner Carrie A. Maxwell Trust, we have a different set of facts to which the same statutory exemption is sought to be applied. Here we have an individual creating a trust for the benefit of individuals. Mrs. Maxwell may have been guided by the highest of motives in creating the trust. She might have thought that she was *102 aiding the church in doing what it should do for Dr. and Mrs. Smith. No doubt, the allowances Dr. Smith was to receive from the respective conferences in which he had served would be insufficient to maintain and support him and his wife during their years in retirement. Nevertheless, it was her act, and not that of the church or of the Foundation, that created the trust. It was she who provided the funds, prescribed the use of them, and restricted their use to the benefit only of Dr. and Mrs. Smith. Even if it were the legal duty, as well as a moral duty, for the Methodist Church to provide means of taking care of its superannuated pastor, that duty could not be assumed by an individual, without making the charity a private one. The individual's act is not that of the church, and, therefore, the individual cannot claim the same rights and benefits of the church. Amy Hutchison Crellin, 46 B.T.A. 1152. The determination of the respondent with respect to the Carrie A. Maxwell Trust is accordingly sustained. Decision will be entered under Rule 50. Footnotes
1. SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS. The following organizations shall be exempt from taxation under this chapter * * * * *
(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation;↩