The Davenport Foundation v. Commissioner.
Davenport Found. v. Commissioner
Docket No. 10427.
United States Tax Court
1947 Tax Ct. Memo LEXIS 8; 6 T.C.M. (CCH) 1335; T.C.M. (RIA) 47341; December 24, 1947
*8 Petitioner, a nonprofit corporation organized pursuant to a trust created in 1939 by Levi M. Davenport, is not exempt from tax under section 101 (6) and (14) of the Internal Revenue Code. Melvin D. Wilson, Esq., 819 Title, Insurance Bldg., Los Angeles 13, Calif., and J. Rex Dibble, Esq., for the petitioner. E. A. Tonjes, Esq., for the respondent. LEECH
Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves Federal income and declared value excessprofits tax deficiencies, as follows: Declared
Value
Excess-Profits
Year
Income Tax
Tax
1940
$ 468.02
1941
1,415.13
$409.20
1942
2,292.63
300.11
1943
2,272.00
86.30
1944
2,804.44
*9 The issue is whether petitioner is exempt from income and declared value excessprofits taxes under section 101 (6) and (14) of the Internal Revenue Code. The case was submitted on a stipulation of facts and oral testimony. The facts as stipulated are so found. Additional facts are found from the evidence. Findings of Fact Petitioner is a corporation with its principal office at Pasadena, California. Its tax returns for the periods involved were filed with the collector of internal revenue for the sixth California district. On May 23, 1939, Levi M. Davenport executed an irrevocable transfer in trust of certain real and personal property to LaVerne College, a corporation, incorporated under Title XVII, Part IV, Division 1, Sections 649 to 651, Civil Code of the State of California, as trustee, and "C. Ernest Davis, Lucile Davenport Weller, J. E. Steinour, Fred A. Flora and L. E. Miller, constituting a board of directors." On the same day this board of directors adopted bylaws for the trust, called "The Davenport Foundation." On the date of the transfer such property had a value of $261,884. On June 1, 1939, Barbara N. Davenport, wife of the donor, transferred *10 to the trust two parcels of real estate having a value of $8,500. The trust indenture states that the trustor is desirous of establishing a permanent foundation to be known as "The Davenport Foundation" for the purposes described therein. It provides that the only duty or obligation of the trustee shall be to hold title and perform such acts as shall be necessary to carry out the orders and directions of the board. The board shall act and constitute the board of trustees of the Foundation and shall have complete control, management and operation of the property forming the trust estate; shall receive and collect the principal and income and, after the payments and deductions hereinafter mentioned, shall pay and/or accumulate, and/or use and invest, hold, apply and distribute the same to, or for the purposes hereinafter stated. No specific purposes are stated other than contained under certain designated headings. For instance, under the heading "RESERVES" it provides: "Before distribution is made of any of the net income reserves shall be set aside as follows to-wit: "(1) 25% of the gross income for taxes, supervision and upkeep. "(2) 12% of the gross income for replacements *11 and betterments." Under the heading, "DISTRIBUTION OF INCOME," it provides: "All the net income available for distribution shall be paid in monthly installments, as follows: "(1) To the Trustor, Levi M. Davenport, the sum of Four Hundred Dollars ($400.00) per month, for and during the term of his natural life. "(2) To LaVerne College, a corporation, the sum of Three Hundred Dollars ($300.00) per month for the purpose of establishing a department of PHILOSOPHY and RELIGION, which department shall be established at the beginning of the school year 1939-1940. "(3) To make suitable and proper provision for the support and maintenance of J. R. Davenport, my brother, as his needs may require, not to exceed however, One Hundred Dollars ($100.00) per month, all of which shall be at the sole discretion of the Board of Trustees. In the event that any of my children should come to want, the Board of Trustees shall use a portion of the income to care for them in so far as their needs may require, all of which shall also be solely within the discretion of the Board of Trustees. "(4) To American Bible Society, with its principal office at Bible House, New York City, the sum of Three *12 Hundred Dollars ($300.00), per annum, payable annually at the discretion of the Board. "(5) To the payment of annuities in such amounts as may be agreed upon between the Board of Trustees and the annuitants, who may add to this Trust. "(6) All of the rest and residue of undistributed income shall be used by the Board of Trustees for such purposes consistent [sic] with the purposes of this trust as may be determined in the sole discretion of said Board of Trustees." The trust indenture outlines in detail the courses to be given and taught by the Department of Philosophy and Religion and the general procedure to be adopted in teaching the subjects. Under the heading "RESERVATIONS," the following provision is made: "It is understood and agreed that during the lifetime of the Trustor, Levi M. Davenport, that the Trustor shall have the right to the use and occupation, rent free, of the home now occupied by him at 674 Elliot Drive, Pasadena, California, or some other home of similar rental value." The trust indenture also contains provisions covering "VACANCIES ON BOARD OF TRUSTEES," "COMPENSATION OF TRUSTEES," "ADDITIONS TO THE FOUNDATION," "CHANGE OF BENEFICIARY" and "POWERS *13 OF TRUSTEES." There is a provision restricting each beneficiary from "anticipating, encumbering, alienating or in any other manner assigning his or her, or its interest" in either principal or income. After the death of the trustor and the individual beneficiaries, the board of trustees is authorized to incorporate the Foundation, in which event LaVerne College shall convey all of its title in the trust estate to such corporation upon request of the board. Included in the real estate conveyed to the trust by Levi M. Davenport was a parcel known as the "First Street property." After the trust was created the trustor desired to improve such property. The trustee was advised by its attorney that it could not borrow money for the benefit of the trust, but it could reconvey the property to the trustor, have him borrow the money and make the improvements and then reconvey it to the trust. This plan was followed. It was agreed by the board of trustees and the trustor that the Davenport home, which had been conveyed to the trust, had been transferred to the trust by mistake and had not been intended to be a part of the trust at that time. Accordingly, about March 26, 1940, the trustees *14 reconveyed this property to the trustor. On July 8, 1940, petitioner was incorporated under the laws of California as a nonprofit corporation, for the stated purpose "To act as Trustee under Christian Educational, Charitable, Eleemosynary, and other charitable trusts." Specifically, petitioner was to replace LaVerne College as trustee of the trust created by Levi M. Davenport. Petitioner's charter contains the usual powers and customary provisions found in corporate charters of this character. Its bylaws provide for a board of trustees, the election of officers and prescribe their powers and duties. They contain no provision for the distribution of income. On September 5, 1940, the Davenport Foundation (the trust) adopted a resolution which, after certain preambles not here important, reads as follows: "NOW THEREFORE Be it resolved that LaVerne College be, and it is hereby instructed to convey to The Davenport Foundation, a corporation, all of the property and assets which LaVerne College now holds under the said Declaration of Trust. Such conveyances and transfers shall be made subject to that certain Declaration of Trust of May 23rd, 1939, designated The Davenport Foundation, *15 an unincorporated association, and the acceptance thereof by this corporation known as The Davenport Foundation shall be a recognition of the fact that the assets so transferred are subject to and accepted by this corporation, subject to the terms and provisions of said Declaration of Trust." On or about October 8, 1940, LaVerne College transferred to petitioner all the real and personal property which it held under and by virtue of the trust created by Levi M. Davenport and Barbara N. Davenport, his wife. On or about May 31, 1941, Levi M. Davenport and his wife transferred to petitioner the Davenport "home place." Contemporaneously therewith, petitioner and the transferors executed an annuity agreement whereby (a) the transferors retained the right to use the home place for their lives; (b) petitioner agreed to pay Lucile Davenport Weller, transferors' daughter, an annuity of $100 per month, and upon her death to pay to her daughter, Dorothy Mae Weller, an annuity of $100 per month. Petitioner's obligation to pay such annuities was absolute and not dependent upon whether petitioner had net income or net earnings. The annuity to Dorothy Mae Weller is to be reduced under certain *16 conditions not now material. No rent was ever paid to petitioner with respect to such home place. The value of the home place on May 31, 1941 was $15,500 and its fair rental value was $1,500 per annum. The taxes and other expenses of upkeep, all of which were paid by petitioner, were as follows: Year
Taxes
Other Expenses
1941
$481.49
$1,040.65
1942
324.60
1,050.32
1943
296.52
113.62
1944
380.19
519.24
On or about May 31, 1941, Levi M. Davenport and his wife transferred to petitioner the aforementioned First Street property. Contemporaneously with such transfer, petitioner and the transferors executed an annuity agreement whereby Levi M. Davenport reserved the net income from such property for his life and reserved the right to designate in writing, during his lifetime, the disposition of such net income for a period not to exceed 10 years after his death. No such designation of the income was made by Levi M. Davenport. The value of the First Street property on May 31, 1941 was $40,000 and its fair rental value was $5,400 per annum. Petitioner never received any income from such property. The taxes thereon for the years 1940 to 1944, inclusive, were *17 paid by Levi M. Davenport. The expenses of upkeep, paid by petitioner, were as follows: Year
Expenses
1940
$ 8.62
1941
0.00
1942
63.02
1943
350.70
1944
1,297.78
During the years 1940 to 1944, inclusive, petitioner made donations or contributions to certain organizations which have not been established as exempt from taxation under section 101 of the Internal Revenue Code, as follows: 1940
1941
1942
1943
1944
Phillip's China Relief
$150.00
Radio Gospel Hour
$50.00
35.00
Flora, Evangelist
8.00
United America Defense Committee
$25.00
National Voice (Includes California Voice)
$15.00
15.00
35.00
W. N. Miles Radio Program
10.00
State Wide Committee, Higher Education
2.00
Los Angeles Times
24.50
Democratic Club for Willkie, Los Angeles, Cal.
$14.18
Jeffersonian Democrats, Los Angeles, Cal.
10.00
25.00
Republican Club, Los Angeles, Cal.
25.00
Democratic Club, Los Angeles, Cal.
25.00
Property Owners' Assn., Los Angeles, Cal.
10.00
10.00
10.00
10.00
10.00
$34.18
$60.00
$49.50
$83.00
$292.00
Petitioner paid *18 to Lucile Weller and Homer Davenport the following amounts: Year
Lucile Weller
Homer Davenport
1940
$1,000
1941
1,200
$625.00
1942
1,200
1943
1,200
1944
1,200
The payment of $1,000 in 1940 to Lucile Weller and the payment of $625 in 1941 to Homer Davenport were payments for the benefit of Levi M. Davenport in connection with his acquisition of certain shares of the capital stock of L. M. Davenport Company which were surrendered to him by Lucile Weller and Homer Davenport. The payments to Lucile Weller during the years 1941 to 1944, inclusive, were made pursuant to the terms of the annuity agreement. During the taxable period 1940 to 1944, the net income, as determined by the respondent, was as follows: Year
Net Income
1940
$ 3,151.61
1941
6,587.50
1942
8,886.04
1943
8,897.62
1944
10,961.62
$38,484.39
During the period 1940 to 1944, inclusive, petitioner paid to organizations and institutions exempt under section 101 (6) an amount aggregating $20,124.09. During the taxable periods involved, petitioner was not exempt from taxation pursuant to the provisions of section 101 of the Internal Revenue Code *19 . Opinion The sole question submitted is whether petitioner is exempt from taxation upon its income by virtue of section 101 (6) and (14) of the Internal Revenue Code. [1] The respondent argues that petitioner is not exempt under section 101 (6), since a portion of its income could and actually did inure to the benefit of private individuals. Respondent further contends that petitioner is not exempt under section 101 (14), for the reason that some portion of its income was paid to individuals or corporations not themselves exempt from tax. The material facts are not in dispute. Petitioner, a nonprofit corporation, was organized to act as trustee under charitable trusts. The properties which Levi M. Davenport and his wife had transferred under an irrevocable declaration of trust, dated May 23, 1939, were conveyed to petitioner subject to the terms and provisions of such trust. The only purposes stated in the trust instrument were to collect the income and distribute or accumulate the same as therein specified. The sum of $400 per month was to be paid to Levi M. Davenport, the trustor, during his life; $300 per month was to be paid to LaVerne College to establish *20 a Department of Philosophy and Religion; in the discretion of the trustees, suitable and proper provision was to be made for the support and maintenance of J. R. Davenport, brother of the trustor, as his needs may require, not exceeding $100 per month; in the event that any of the trustor's children should come to want, a portion of the income was to be used to care for them as their needs may require; $300 per annum was to be paid to the American Bible Society; and the residue of the undistributed income was to be used for purposes consistent with the purposes of the trust. Obviously, the income of the trust was not to be devoted exclusively to charitable purposes. Nor were the purposes, other than charitable, merely incidental to the charitable purposes. James Sprunt Benevolent Trust, 20 B.T.A. 19; Scholarship Endowment Foundation v. Nicholas, 106 Fed. (2d) 552. The payments to be made to the trustor and the members of his family were at least equally the concern of the trustor. One of the dominant purposes for which the trust was created was those payments. The provision contained in the trust to the effect that the Foundation was not to be incorporated *21 until after the death of the trustor and the other individual beneficiaries seems to confirm this view. Petitioner contends that since the First Street property and the home property were conveyed to petitioner subject to certain reserved interests and the payment of specific annuities, it falls within the rule of Lederer v. Stockton, 260 U.S. 3; *22 Emerit E. Baker, Inc., 40 B.T.A. 555. To these may be added the case of Edward Orton, Jr. Ceramic Foundation, 9 T.C. 533, decided since the filing of briefs herein. In Lederer v. Stockton, supra, the Supreme Court held that a hospital was not liable for tax on income it had received from property devised to it but subject to the payment of annuities. In Emerit E. Baker, Inc., supra, it was held that a corporation otherwise exempt from income tax under section 101 (6) of the Revenue Acts of 1934 and 1936 is not deprived of exemption because of payments to a donor's widow and of payments for the education of her nieces or nephews pursuant to the donor's will. The decision was based on Lederer v. Stockton, supra.In Edward Orton, Jr. Ceramic Foundation, supra, we held, under the rationale of the Baker and Lederer cases, that the Foundation was exempt from tax under the following facts: Edward Orton, Jr., deceased, by his will provided for the creation of a Foundation for aiding and promoting the science of ceramic engineering. He divided his estate into Parcel No. 1, comprised of a going business engaged in *23 the manufacture of pyrometric cones, and Parcel No. 2, consisting of all the remaining assets of his estate. Since Parcel No. 1 contained the principal income producing properties, he directed the trustees controlling Parcel No. 1 to pay to his widow the sum of $42,000 over a period of five years. The widow, being the sole heir, had the election to take under the will or under the Ohio statutes of distribution and descent which entitled her to a one-half interest in all the testator's property. She elected to take under the will, but as a condition to such election entered into a contract with the trustees whereby, after the completion of the payments of the sum of $42,000 provided in the will, she was to be paid a life annuity of $350 per month. The payments to the widow were a charge upon all the assets of the Foundation. Of the sum of $42,000, all had been paid prior to the taxable year except $2,845.93. It was held that the Foundation was a separate distinct entity; that the payments to the widow were not the real purposes for which the Foundation was established, but were payments which had to be made to free the assets and income for use in the scientific aims of the Foundation. *24 The instant case is readily distinguishable. If the First Street Property and the home property which were transferred to petitioner, subject to reservations, were the only properties here involved, the similarity of the cases might prevent their distinguishment. The record here establishes that the First Street property and the home property were conveyed as a part of the original trust. Later, these properties were conveyed back to the trustor, and subsequently reconveyed to petitioner under certain reservations. The legality of such transactions may be somewhat doubtful since the original declaration of trust was by its terms irrevocable, and there is no evidence that the individual beneficiaries of the trust, other than the trustor, ever consented to such reconveyance. However, we need not dwell on the legality of these retransfers to the trustor since additional properties were transferred under the original trust, the income from which was to be distributed to members of the trustor's family. And it does not appear that such beneficiaries ever waived or surrendered their rights under the original trust. The petitioner accepted these additional properties "subject to the terms *25 and provisions of said Declaration of Trust". Furthermore, this record shows that during the taxable periods a portion of petitioner's income was actually used to pay taxes and other expenses of the trustor's home and to provide an annuity of $100 per month to trustor's daughter, Lucile Davenport Weller. Substantial sums were also paid for the upkeep of the First Street property. Since the trust was created for private as well as for public purposes, all the income of the trust corpus was not to be devoted exclusively to charitable purposes. To be classed as tax exempt under section 101 (6) of the Internal Revenue Code, a corporation must establish that no part of its income is to inure to the benefit of a private individual or stockholder. James Sprunt Benevolent Trust, supra; Scholarship Endowment Foundation v. Nicholas, supra.We conclude petitioner has not met the test prescribed in the statute. Nor do we think petitioner qualifies as an exempt corporation under the provisions of section 101 (14) of the Code. In the taxable years a portion of petitioner's income was distributed to organizations or persons not exempt from tax. *26 Out of its total income of $38,484.39, approximately $20,000, only, was actually distributed to corporations or individuals properly classified as exempt from tax. To come within the purview of subdivision (14), a corporation must be organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from tax. Clearly, petitioner does not meet this test. The respondent's determination is sustained. Decision will be entered for the respondent. Footnotes
1. SEC. 101. EXEMPTIONS FROM TAX ON CORPORATIONS. The following organizations shall be exempt from taxation under this chapter - * * *
(6) Corporations, and any community chest. fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; * * *
(14) Corporations organized for the exclusive purpose of holding title to property, collecting income therefrom, and turning over the entire amount thereof, less expenses, to an organization which itself is exempt from the tax imposed by this chapter;↩