**HOME OIL MILL et al. v. WILLINGHAM.**
Civ. A. No. 5669.

District Court, N. D. Alabama, S. D.
July 26, 1945.

Chas. H. Eyster, of Decatur, Ala., for plaintiffs.

John D. Hill, U. S. Atty., and William H. Burton, Jr., Asst. U. S. Atty., both of Birmingham, Ala., for defendant.

LYNNE, District Judge.

This cause coming on for trial on July 18, 1946, without the intervention of a jury, and the Court having heard and considered the evidence and exhibits introduced and the stipulations of the parties, and having read and considered the briefs filed by the respective parties, and being fully advised in the premises, does make and enter the following findings of fact, conclusions of law, and judgment:

## Findings of Fact

1. The Home Oil Mill, on its earnings for the tax year commencing August 1, 1941, and ending July 31, 1942, paid income tax to Henry J. Willingham, Collector of Internal Revenue for the District of Alabama, Birmingham, Alabama, in the sum of $21,737.80, and on November 5, 1943, the plaintiffs timely filed a properly executed claim for refund, together with supporting exhibits. The refund was not made by the Commissioner, and the plaintiffs filed this suit to recover such taxes within the time provided by law.

2. W. R. Spight died testate September 2, 1936, at the age of 74 years, leaving an estate exceeding in worth $1,000,000, and consisting principally of an oil mill (the taxpayer here), wholesale grocery, two apartment buildings, a hotel, large real estate holdings, considerable cash, stocks, notes and bonds, and disposed of by him in a last will and testament executed August 15, 1936, which was duly admitted to probate and record September 9, 1936, in the Probate Court of Morgan County, Alabama, of which county and state he was a resident for many years prior to his death.

3. Mr. Spight was a devout, faithful and loyal member of the Baptist Church, and an ardent believer in and liberal contributor to the work and support of foreign missionaries.

4. He and his sister, Mrs. Burr, lived together for many years in his home, and were of the same religious faith and belief, and for years it had been his practice and custom to talk over and discuss with her his business and plans of disposition of his estate, and the several provisions of his will were fully discussed with his sister, and instructions and directions given to her by Mr. Spight in its due execution by her as Executrix and Chairman of the Trustees.

5. Mr. Spight was a widower and left surviving him as his sole next of kin his sister, Mrs. Burr, present age 73.

6. His will was executed 15 days before his death. Under his will he provided for payment of his debts; made a bequest of $25,000 cash to his sister, Mrs. Burr, and devised to her a life interest in his home. He gave $10,000 to the Benevolent Society Hospital, and $20,000 to the Central Baptist Church at Decatur. He created a trust to be known as the "W. R. Spight Religious and Charitable Trust," and named Mrs. Burr, Mr. Green and Mr. Johnson as the Trustees of this trust, and to these Trustees he gave, willed, devised and bequeathed all of his residuary estate for

eight admitted religious, educational, charitable or eleemosynary institutions, the devise and bequest to these institutions being in percentages and payable as fixed by him in his will, with provision that if any of the institutions were incapable of receiving same under the will, it was to be given and willed to the others named in the proportions and percentages fixed.

7. The Trustees were fully authorized and empowered to operate and carry on all of his businesses and to make distributions to the eight beneficiaries in partial payments. Mrs. Burr was nominated and appointed as Chairman of the trust to serve and act as such during the existence of the trust, and to be in charge and control of the several businesses, and for such services she was to be paid from the earnings of the trust, an annual salary of $15,000, as long as she lived and the trust continued in existence, and should she call upon the other Trustees to actively assist in the conduct of the businesses and affairs of the trust, the amount of compensation to all of the Trustees should not exceed $15,000 a year. This salary was to be paid from the annual earnings, profits, interest and dividends of the trust property, but in the event these were insufficient, then a sufficient amount could be taken from the corpus of the trust estate to make up the deficiency.

8. Mrs. Burr was named as the Executrix, without bond, and duly executed the will through the Probate and Circuit Courts of Morgan County, Alabama, to a final settlement of her executorship in October, 1940. Pursuant to the provisions of the will, the trust estate was recognized and adjudged and declared to exist by the Circuit Court of Morgan County, Alabama, in Equity, by decree of that court rendered October 12, 1940, to be administered in said court by Mrs. Burr and Mr. Green and Mr. Johnson, and successors, as Trustees of the "W. R. Spight Religious and Charitable Trust."

9. On final settlement by the Executrix and under decree and order of the court, all residuary properties, real, personal, mixed and choses in action were decreed to belong to Mrs. Burr and Mr. Green & Mr. Johnson, as Trustees of the "W. R. Spight Religious and Charitable Trust," for the eight religious, charitable, educational and eleemosynary institutions named in the will and for the purposes therein fixed, and due and proper conveyance, transfer, assignment and deed of said properties was made by the Executrix to the Trustees, etc.

10. During the administration of the estate, the Executrix paid to the eight beneficiaries $120,000, and on final settlement conveyed and delivered to the Trustees an estate which, after deduction of the several specific bequests, costs and administration expenses, etc., was, by reason of earnings during administration, of a net value about equal to its value at the time the estate first came into existence.

11. Among the properties transferred, assigned and delivered to the Trustees in October, 1940, were 300 shares of stock of the Home Oil Mill, a corporation, par value $100 per share, being all of the outstanding stock of said corporation, and having a total book value at that time of $252,451, this being approximately 25% of the net worth of the properties coming into the trust estate.

12. The Trustees, after due consideration, legally amended, changed and altered the charter of the Home Oil Mill, July 25, 1941, and wrote into its new charter the tax exemption provisions of Title 26, Section 101, Subsection (6), U.S.C.A. Int.Rev.Code, and certain special provisions, all as authorized by the Statutes of Alabama, and fixed the capital stock at $30,000, represented by 300 shares of common stock of the par value of $100 per share. Certificates for one qualifying share each were issued to the five directors of the reorganized corporation, each of whom was nominated as an acting or successor to an acting trustee under the testator's will. A certificate for the remaining 295 shares was issued to the trustees of the "W. R. Spight Religious and Charitable Trust." The certificates issued for said qualifying shares were assigned to the Trustees.

13. The charter of the Home Oil Mill includes the following provisions:

(a) It positively limits and restricts the holding and ownership of stock in the corporation for the exclusive purpose of pro-

ducing income for institutions which are admittedly exempt because they are religious, charitable and educational in nature; it provides that the stock of the corporation shall not be held by any private shareholder or individual so as to receive any benefit of any earnings inuring from said stock, but that the stock shall be held solely and exclusively by and for charitable, religious and educational institutions and purposes, and that the net earnings, profits, dividends and increments inuring from said stock, less legitimate costs and expenses of operation, shall be turned over in their entirety and inure solely and exclusively to the benefit of charitable, religious and educational institutions and purposes, or to organizations which are themselves exempt from income tax and capital stock tax under the laws of the United States, and shall never inure to the benefit of any private shareholder or individual.

(b) The operation and carrying out the objects and purposes of the corporation shall always be solely for charitable, religious and educational institutions and purposes; neither the stock of said corporation, or any of its shares, shall ever be transferred, assigned, sold and delivered to any person, organization or association except that person, association or organization shall hold said share of stock solely and exclusively for charitable, religious and educational institutions and purposes, and not otherwise; and that no share or shares of said stock shall ever be held by any person, individual, association or organization so that the net earnings or any part thereof or assets of the corporation derived from the ownership and holding of such stock shall inure to the benefit of any private shareholder or individual.

(c) That no substantial part of the activities of the corporation shall ever be the carrying on of propaganda or otherwise attempting to influence legislation, and that the corporation shall in no wise engage in the carrying on of such propaganda.

14. The charter of the corporation was drafted and formed specifically to comply with the provisions of the Internal Revenue Act providing exemptions from income taxes.

15. The charter of the corporation was so amended prior to the commencement of the tax year for which the refund of tax is sought in this case, and continues in existence.

16. The Home Oil Mill, since its organization under its amended charter, has been operated solely and exclusively to produce income for religious, charitable, educational and eleemosynary purposes, and no part of its net earnings or assets have been paid to or inured to the benefit of any private shareholder or individual; and no substantial part of the activities of the corporation is carrying on of propaganda or otherwise attempting to influence legislation. All dividends declared and paid by the corporation have been distributed in this manner: Eight separate checks have been drawn by the officers of the corporation, each payable to the order of the named Trustees of the "W. R. Spight Religious and Charitable Trust," as Trustees for one of the eight named beneficiaries in the proportions and percentages provided by the will; in turn, the Trustees have indorsed each check to the order of the beneficiary named therein. Each of said beneficiaries is a charitable, religious or educational institution and exists solely for charitable, religious, educational or eleemosynary purposes.

17. No part of the salary provided under the will of W. R. Spight to Mrs. Burr, as Chairman of Trustees, has been paid by the Home Oil Mill, nor has the Home Oil Mill ever paid to any Trustee of the trust any compensation or any of its earnings or any of the corpus of its properties and estate during the tax year, nor at any time since the new organization of the Home Oil Mill, nor has it paid into the trust estate any money whatsoever, all payments having been made by it, as aforesaid, so that such payments have gone directly to the designated beneficiaries in the proportions provided for in the will, and have not become commingled with other trust income.

18. The trust estate has been operated over the tax year and continuously, and the court finds that the trust estate after paying all expenses has annually shown a substantial net earning, and is without debts or obligations to any one, and has paid to the named beneficiaries $40,000 annually, or a

total of $200,000 which, with the payments previously made from the estate, make a total payment to the beneficiaries at this time of $320,000; that the trust estate has paid a salary to Mrs. Burr of $15,000 every year, which sum the court finds and holds to be reasonable and a fair compensation and salary to Mrs. Burr for actual services performed by her in the active management of the trust.

19. The Court finds that it was not the intent of the testamentary trustor to provide an annuity of $15,000, payable out of the income or corpus of his residuary estate, to his sister for the term of her life. On the contrary, the court finds that it was his intent to insure that his beneficent plans should be faithfully executed and that the beneficiaries of the trust should ultimately receive, in maximum amount, the usufruct and corpus thereof. To that end, for one year after he became aware of the imminence of his death from an incurable malady, the testator carefully educated his sister in the character, extent, problems and policies of the business enterprises, included within the trust estate, and explained to her his plans for devoting his accumulated wealth to the promotion of the foreign missions program of his church. And to that end he nominated her as Chairman of the Trustees under his will and provided that she should be paid an annual salary for services rendered in the management of the trust.

20. The annual salary of $15,000 was payable to Mrs. Burr out of the income of the trust estate or, if such income should prove inadequate, out of the corpus, until her death or the termination of the trust, whichever event first occurred.

21. It was the intent of the testator to invest the Trustees nominated in his will with full discretion to make final distribution of the trust estate to the beneficiaries thereof at any time, either before or after the death of Mrs. Burr, and that, upon the termination of the trust, the annual salary of his sister should cease. To guard against a possible perversion of the testamentary intent, it was provided that, in any event, the trust estate should be liquidated and final settlement of the trust should be accomplished within one year after Mrs. Burr's death.

22. The payment of an annual salary of $15,000 was not intended by the testator as a gratuity to his sister. He also provided in his will that, in the event his sister should call upon the remaining trustees to assist actively in the business and affairs of the trust, the compensation of all the trustees combined should be fixed in an amount not to exceed $15,000, Mrs. Burr to have the authority to fix the amount of compensation to be paid to the other Trustees. It was further provided that, after the death of Mrs. Burr, the compensation to be paid to the acting trustees should not exceed $15,000 per year. The court finds that it was the intention of the testator, based upon his detailed knowledge of his affairs and his experience as a successful business man, to prescribe an annual compensation for his sister and other acting trustees which would not only fairly remunerate her or them for managing an estate of the size he contemplated but also would operate to delimit the authority of a court having jurisdiction of such estate to award to the Trustees, for such services, fees in excess of the specified amount.

23. The probability of the invasion of the corpus of the trust or the interception of the net earnings of the Home Oil Mill to pay the annual salary of Mrs. Burr or to make up a deficiency therein is so remote as to be negligible. The life expectancy of Mrs. Burr, according to the mortality tables, at the time of testator's death in 1936, was 15.58 years and, as of this date, is 8.89 years.

24. The trust estate under estate tax value of 1936 has a present value of $661,454 inclusive of estate tax values of Home Oil Mill stock of $245,571 or a net 1936 value of $415,983, exclusive of Home Oil Mill stock, and has a present day value of $1,059,431 inclusive of Home Oil Mill stock valued at $325,823, or a net value of $733,608, not including the Home Oil Mill stock.

25. The court finds that the Home Oil Mill had in its surplus account $222,451.81, as of July 31, 1941, and that the surplus at

the end of the taxable year, July 31, 1942, existed in the amount of $242,501.34; as of July 31, 1943, the surplus was $263,247.59; as of July 31, 1944, the surplus was $281,345.39; and, as of July 31, 1945, the surplus was $295,823.84.

## Conclusions of Law

1. This court has jurisdiction of the parties to and of the subject matter of this suit.

2. The income of plaintiff, Home Oil Mill, a corporation, was exempt from the payment of income tax on its earnings for the tax year commencing August 1, 1941, and ending July 31, 1942, under the provisions of Title 26, Section 101(6), U.S. C.A. Int.Rev.Code.

3. The plaintiffs are entitled to recover of the defendant the sum of $21,737.80, together with legal interest thereon as provided by law.

4. While the general rule of law is that in cases of doubt, exemption provisions of tax statutes are to be construed strictly and are to be resolved in favor of the taxing power, an exception exists in the case of provisions exempting charitable, religious, educational and similar organizations. In the case of such exemptions, the rule of liberal construction is to be applied. Trinidad v. Sagrada Orden, etc., 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458; Helvering v. Bliss, 293 U.S. 144, 55 S.Ct. 17, 79 L.Ed. 246, 95 A.L.R. 207; Roche's Beach, Inc. v. Commissioner of Internal Revenue, 2 Cir., 96 F.2d 776.

5. If the organization and operation of the taxpayer corporation are considered apart from the will of W. R. Spight, which created the trust estate of which it is a unit, no difficulty is encountered in determining that its earnings fall within the exception provided by Title 26, Section 101 (6), U.S.C.A. Its charter adopts the very language of the statutory exemption and expressly provides that its sole and exclusive purpose is to produce income for institutions and organizations admittedly exempt from the tax. The evidence discloses that from the date of its reorganization, which was prior to the tax year involved, all of its net earnings have been paid directly to charitable, religious and educational organizations exempt from the tax. Thus, its organization and operation, disassociated from provisions of the Spight will, hereinafter discussed, bring it clearly within the principle announced in Trinidad v. Sagrada Orden, etc., supra; Roche's Beach, Inc., v. Commissioner of Internal Revenue, supra; Debs Memorial Radio Fund v. Commissioner of Internal Revenue, 2 Cir., 148 F.2d 948; Bohemian Gymnastic Ass'n Sokol of City of New York v. Higgins, 2 Cir., 147 F.2d 774.

6. It is insisted by the defendant that the taxpayer may not avail itself of this exemption for the following reasons: All of its capital stock was owned by W. R. Spight during his lifetime; said stock was a part of the residuary estate of W. R. Spight devised by his will to trustees of the W. R. Spight Religious and Charitable Trust; said will provided that testator's sister and sole next of kin, Mrs. Burr, should serve as chairman of the trust and that she should be paid an annual salary of $15,000 as long as she lived and the trust continued in existence, and that said trust must be liquidated and final distribution accomplished within one year after the death of Mrs. Burr. It is admitted by the defendant that each beneficiary of said trust is a charitable, religious or educational institution and exists solely for charitable, religious, educational or eleemosynary purposes. But it is insisted that the testator had a dual motive in creating said trust in that he desired to provide a lifetime competence for his sister before passing his residuary estate on to his ultimate donees. It is next insisted that the provisions of the amended charter of the taxpayer to the effect that its net earnings should bear no part of the salary of Mrs. Burr was in effect a perversion of the trust and that, notwithstanding the attempt of the trustees to remove the taxpayer as a contributing source of income to the payment of Mrs. Burr's salary, a possibility exists, under the terms of the will, that the assets of the taxpayer might be invaded or its earnings intercepted either to pay such salary in its entirety or to make up a deficiency therein. If it should be conceded that the provision in the will for the payment of an annual salary to Mrs.

Burr was a device adopted by the testator to provide for the comfort, support, and maintenance of his sister during the remainder of her life, it would be the duty of the court to look through the form to the realities of the situation and to hold that the postponement of distribution of the residuary estate to the ultimate donees for this reason would deprive the taxpayer of its claimed exemption.

7. It is my conclusion that the testator did not have the asserted dual motive in creating the trust. I am of the opinion that the testator intended that his very considerable residuary estate, both corpus and income, should be devoted, in maximum amount, to charitable purposes. In view of the fact that the residuary estate consisted largely of three successfully operating business enterprises, including the taxpayer, I am not persuaded by defendant's argument that the only apparent reason for the intervention of the trust between testator's death and distribution to the ultimate beneficiaries was to provide a lifetime competence for testator's sister. To have provided for the absolute liquidation of these business concerns within the period of execution of the will would not have been the act of a prudent and successful businessman and would have resulted in a considerable loss to the beneficiaries. It is my opinion that testator was motivated in the nomination of his sister as chairman of the trust, and thus as the executive head of these several businesses, by the assurance that she would faithfully and successfully carry out his beneficent plans. He had thoroughly acquainted her with the problems and policies of his business interests and she was in perfect sympathy with his desire to promote the foreign missions program of his church which was her own. By the terms of his will, the testator did not postpone the distribution of his residuary estate and thereby provide for the termination of the trust until after Mrs. Burr's death. On the contrary, he invested his trustees with discretion to liquidate the trust estate and make distribution, either full or partial, to the beneficiaries, at any time. It is apparent that the testator recognized that an annual salary of $15,000 would be a reasona-

ble and fair compensation to his sister or anyone else for a discharge of the duties and responsibilities inherent in the actual management of an estate of this size and character.

8. In the absence of a provision in a will fixing the compensation to be paid to trustees, the court having jurisdiction of the trust may fix, determine, and allow the fees to which it finds the trustee is entitled. Code of Alabama 1940, Title 58, Sec. 5. But the general rule in Alabama is that when the instrument creating a trust fixes the compensation, the compensation fixed cannot be increased by the court, subject only to the rules of judicial construction of the instrument in doubtful cases and to the further rule that an attempt to regulate by will the jurisdiction of the courts is ineffective to change the statutory provisions with reference thereto. Birmingham Trust & Savings Co. v. Hightower, 233 Ala. 39, 169 So. 878. It is my conclusion, based upon the evidence before me, and taking into account the services actually performed by Mrs. Burr, the degree of success which attended her efforts in the management of the trust estate and the responsibilities devolved upon her, that a court in this jurisdiction would probably have awarded her, or anyone performing the services which she performed, fees considerably in excess of her annual salary of $15,000. Therefore, it may be assumed that the testator, in anticipation of such a result, intended to delimit the authority of a court having jurisdiction of the trust to the end that substantially larger amounts would not be diverted from his donees.

9. It is my conclusion that the device adopted by testator of entrusting the management of his residuary estate to his sister and the limitation of the salary payable to her or to other acting trustees from the income of the trust were reasonably adapted to the effectuation of his sole intent, which was to devote his accumulated wealth to the promotion of the work of his church. If that conclusion is sound, neither the family relationship nor the provision for the compensation of the sister on a fair and reasonable basis for services actually performed would operate to deny to taxpayer benefit of the principle an-

nounced in the cases cited under paragraph 5 above.

### Judgment

It is, therefore, Ordered, Adjudged and Decreed by the Court that the plaintiff herein have and recover of and from the defendant the sum of $21,737.80, together with legal interest thereon as provided by law, and the costs of this suit, for which judgment and costs an execution may issue.