OPINION. LeMire, Judge: The petitioner’s contention here is that it is exempt from tax under the provisions of section 101 (6) of the Internal Eeve-nue Code. That section provides exemption from income tax for: Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational ■ purppses, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation. That the petitioner was a “foundation” as' that term is used in the statute is not questioned. The respondent argues, however, that petitioner was neither organized nor operated exclusively for the purposes enumerated in the statute and that a large portion of its profits inured to the benefit of an individual, Mrs. Orton. The predominate purpose for which the petitioner was organized is clearly shown by the provisions of the founder’s will under which it was created and in the other evidence before us. That purpose, in its broadest sense, was to promote the science or art of ceramics. More particularly, it was to promote and conduct scientific research in the field of burning and curing various types of clay used in the manufacture of ceramics. Whether such a purpose is within the scope of the above quoted statute is the first question to be decided. The foundation was not a charity in the narrow sense of having a purpose of ministering to the wants of the poor; but the term “charitable” as used in the statute has a broader meaning than that. In United States v. Proprietors of Social Law Library, 102 Fed. (2d) 481, it was said that: The term “charitable” is a generic term and includes literary, religious, scientific and educational institutions. As the court said in Missouri Historical Society v. Academy of Science, 94 Mo. 459, 8 S. W. 346 * * *: “Any gift not inconsistent with existing laws, Which is promotive of science, or tends to the education, enlightenment, benefit, or amelioration of the condition of mankind, or the diffusion of useful knowledge, or is for public convenience, is a charity * * It is stipulated herein that ceramic engineering is recognized as an “applied science” for instructional purposes in a number of leading universities and colleges in this country and Canada. In the absence of any factual showing to the contrary, we think that this establishes the scientific purpose of the foundation and satisfies the requirements of the statute, if the foundation was organized and operated solely, or predominately,- to promote this science. The manufacture and sale of the standard cones was not the ultimate purpose of the foundation. That was merely a means of accomplishing its real purpose. The income from this business was to be used for financing the research work. In applying the exemption clause of the statute, the test is not the origin of the income, but its destination. Trinidad v. Sagrada Orden de Predicadores, 263 U. S. 578; Roche's Beach, Inc. v. Commissioner, 96 Fed. (2d) 776. In the last cited case the court said of the statutory provisions under consideration that: * * * This does not mean that to come within the exemption a corporation may not conduct business activities for profit. The destination of the Income is more significant than its source. * * * See also Koon Kreek Klub v. Thomas, 108 Fed. (2d) 616. The respondent argues that the foundation was organized and operated principally for the benefit of the manufacturers of ceramics and not for the public at large. It is true that the manufacturers were the chief beneficiaries, but the products and the services of the foundation were available to anyone interested in ceramics. It was the science as a whole that the foundation sought to benefit. Roger L. Putnam, 6 T. C. 702, is relied upon by the respondent “because of the striking similarity of its facts to those here.” That case involved the deductibility under section 23 (o) (2), Internal Revenue Code, of a gift for the benefit of Lowell Observatory, a scientific organization which had been established by the donor’s uncle. The donor’s uncle in his will left the residue of his estate in trust, one-half the income, after deducting 10 per cent to be added to capital, to be paid annually to his wife for life and the balance to go to the observatory. The wife was also to have the use of the family residence, which was held by the trust, rent free. We held that the observatory was not an independent “fund or foundation” separate from the trust estate and that the trust estate as a whole was not operated exclusively for scientific purposes. We said that the benefits to the testator’s widow were too material to be ignored. In the instant case the foundation was a separate and distinct entity. Under the testator’s will his wife was entitled to receive, over a period of five years, monthly payments out of the income of the foundation aggregating $42,000. The last payments, amounting to $2,845.93, were made to her during the taxable year 1940. After these payments ceased the wife began receiving the life annuity payments of $350 per month under the collateral agreement which she and the trustees of the foundation had entered into. The- payments of income to the wife, both under the will and under the agreement, were not the real purpose for which the foundation was established. They were a charge upon its entire assets and had to be paid in order to free the assets and income for use in the scientific aims of the foundation. In this respect the facts are indistinguishable from those in Emerit E. Baker, Inc., 40 B. T. A. 555, where we held that a corporation, otherwise entitled to exemption from income tax under section 101 (6) of the Kevenue Acts of 1934 and 1936, was not deprived of the exemption because of payment of an annuity to his widow. In that case the testator left his residuary estate to a charitable corporation which he had organized during his lifetime, subject to annuity payments of $12,000 a year for life to his widow. His widow, in lieu of her dower rights under the laws of the State of Illinois, agreed with the corporation to accept a life annuity of $19,200. Our holding that the life annuity to the widow did not defeat the exempt status of the corporation was based largely upon the decision of the United States Supreme Court in Lederer v. Stockton, 260 U. S. 3. In that case the Supreme Court held exempt from tax the income from a residuary estate which was devised to a hospital, subject to payment of certain annuities. The obligation to pay the annuities was held not to defeat the exemption. In the instant case the income-producing property all belongs to the foundation, and if the foundation should cease to exist it will all go to Ohio State College after the death of the life annuitant. The respondent’s contentions here are not without support, however. In Scholarship Endowment Foundation v. Nicholas (C. C. A., 10th Cir.), 106 Fed. (2d) 552, exemption was denied a scholarship endowment foundation where at first all of the income and later, by agreement, certain life annuities were payable to the founder and his wife. The funds consisted of stocks and bonds. Only a small portion of the income was used for endowment purposes in the taxable years involved. The court based its denial of exemption on the participation of those individual annuitants in the profits of the foundation. The basis for distinguishing these cases must be found in the general purpose and history of the trusts or foundations under consideration. Where, as in the instant case, the evidence shows a clear and predominant purpose to aid the charity and where the noncharitable benefits are incidental to that purpose, we think that the exemption should be allowed. As stated in Helvering v. Bliss, 293 U. S. 144: * * * The exemption of income devoted to charity and the reduction of 'the rate of tax on capital gains were liberalizations of the law in the taxpayer’s favor, were begotten from motives of public policy, and are not to be narrowly construed. * * * We think that the petitioner here is a tax-exempt foundation within the meaning of the statute. Reviewed by the Court. Decision will be entered wider Rule 50.