**AMERICAN PITCH PINE EXPORT CO., Inc. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 13289.

United States Court of Appeals,
Fifth Circuit.

May 1, 1951.

Robert Ash, Washington, D. C., for petitioner.

Carolyn R. Just, Ellis N. Slack, Melva M. Graney, Spl. Assts. to Atty. Gen., Theron Lamar Caudle, Asst. Atty. Gen., Charles Oliphant, Chief Counsel, W. Herman Schwatka, Spl. Atty., Bureau of Int. Rev., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

BORAH, Circuit Judge.

This petition for review involves an alleged deficiency in income tax for the fiscal years ending October 31, 1941, and October 31, 1942, declared value excess profits tax for the fiscal year ending October 31, 1942, and excess profits tax for the fiscal years ending October 31, 1942, and October 31, 1943. Two questions are presented: (1) Whether under the applicable provisions of the Internal Revenue Code[1] the Tax Court's findings of reasonable allowances for compensation for personal services rendered by eight of taxpayer's officers and employees for the years aforementioned were clearly erroneous; and (2) whether the taxpayer, in computing its income for

the fiscal year 1943, is authorized under Section 22(c) of the Internal Revenue Code, 26 U.S.C.A. § 22(c), to use an October 31, 1943 estimated inventory of 20 piles of resawed lumber in preference to an inventory by actual count available to taxpayer following the close of its fiscal year, but prior to the due date of its 1943 return.

The material facts relating to the question of reasonable allowances for compensation reveal that prior to the European War in 1939 taxpayer had an established position in the lumber export market but when this country entered the war its entire export business was regarded as temporarily lost. Faced with the same situation, other large lumber export companies decided that a transition to a domestic lumber business was impossible, but taxpayer thought otherwise, and its officers and other key employees worked hard and were successful in adjusting taxpayer's operations to the domestic lumber trade. And in so doing its officers and key employees frequently worked seven days a week and at night, although prior to 1941 they worked only five and one-half days a week.

From 1935 to 1940 taxpayer did not materially increase the compensation paid to its officers and key employees but beginning in the fiscal year 1941, as will more fully appear from the tabulation set forth in the margin,[2] very substantial raises in

1. Sec. 23 of the Internal Revenue Code, 26 U.S.C.A. § 23, reads in part as follows:

"§ 23. Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) (as amended by Sec. 121 of the Revenue Act of 1942, c. 619, 56 Stat. 798) Expenses.

"(1) Trade or business expenses.

"(A) In general. All the ordinary

and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *."

2. Taxpayer paid its officers and stockholder-employees the following amounts which were designated as compensation for services:

| EMPLOYEE | YEARS ENDED | | | |
| | 10-31-40 | 10-31-41 | 10-31-42 | 10-31-43 |
| --- | --- | --- | --- | --- |
| J. E. Burtis | $ 9,000.00 | $19,000.00 | $38,917.95 | $32,500.00 |
| T. A. Stubbs | 5,100.00 | 7,080.00 | 14,608.95 | 16,250.00 |
| L. N. Hobbs | 3,600.00 | 5,100.00 | 11,667.16 | 13,000.00 |
| E. H. Albrecht | 4,140.00 | 5,640.00 | 11,712.16 | 13,000.00 |
| A. Campodonico | 3,000.00 | 4,500.00 | 7,083.60 | 7,800.00 |
| W. H. Tippin | 2,862.50 | 5,175.00 | 11,867.16 | 13,000.00 |
| C. R. Holloway | 2,547.81 | 4,689.12 | 12,834.20 | 11,050.00 |
| W. B. McDavid | 6,343.15 | 3,673.89 | 2,262.67 | 2,400.00 |

pay were given the eight officers and key employees whose compensation is here in question. It will be noted from the tabulation that the amounts paid each of these employees in 1942, with one exception,[3] represented increases of more than 100% over those paid to the same individuals in 1940. Indeed, most of these employees received compensation far in excess of their 1940 pay. But the significant fact is that these were not truly arms-length dealings for all of these employees were stockholders of taxpayer. In the taxable year 1941, their combined stock holdings controlled taxpayer; in 1942 and 1943, they owned all of taxpayer's stock. During the fiscal year 1942 taxpayer paid its stockholder-employees additional compensation or bonuses on four different occasions within a period of six months, the largest amount, $18,417.95, being paid to taxpayer's president, Burtis, who owned 667 of the 1,000 shares of outstanding stock. In the same year, taxpayer made a net profit before taxes of $118,920.90, which was several times as much as it had made in any previous year,[4] but paid only $25,000 in dividends despite the fact that it had paid $30,000 in 1937 and $31,000 in 1938, when its earnings were very much less.[5] In the fiscal year 1943 taxpayer made a net profit before taxes of $65,385.47 but paid no dividend.

No good purpose would be served by setting forth in detail the opinion testimony of taxpayer's expert witnesses to the effect that compensation paid to certain of taxpayer's officers was entirely reasonable, nor the Government's evidence with respect to salaries paid to corresponding officers of two lumber companies engaged in the export trade. Of course, the testimony offered by each side was favorable to its position but the Tax Court was not required to accept the testimony of either the Government or the Taxpayer and it did not do so but reached its own independent conclusion after resorting to all the aids offered by the record.

Numerous decisions indicate that the question of a reasonable allowance for salaries or other compensation under the provisions of Section 23(a) (1) (A) of the Internal Revenue Code and applicable Treasury Regulations is purely a factual one, the resolution of which is committed to the trier of facts, in this case the Tax Court. Trust of Bingham v. Commissioner, 325 U.S. 365, 370, 65 S.Ct. 1232, 89 L. Ed. 1670; Gem Jewelry Co. v. Commissioner, 5 Cir., 165 F.2d 991; Leedy-Glover & Insurance Realty Co. v. Commissioner, 5 Cir., 184 F.2d 833. The Tax Court's finding of an amount constituting reasonable compensation is to be accepted unless clearly erroneous.[6] Certainly there is a ra-

---

3. McDavid was taxpayer's exclusive representative in Argentina. In the taxable years in question the Argentine market was closed and compensation paid to McDavid was in the nature of a fee to

| | | | |
|---|---|---|---|
| 1936 | $37,544.15 | 1940 | $16,519.67 |
| 1937 | 21,943.32 | 1941 | 29,615.85 |
| 1938 | 38,351.32 | 1942 | 118,920.90 |
| 1939 | 24,185.60 | 1943 | 65,385.47 |

The amounts designated as dividends and paid by taxpayer during the eight

| | | | |
|---|---|---|---|
| 10–31–36 | None | 10–31–40 | None |
| 10–31–37 | $30,000.00 | 10–31–41 | None |
| 10–31–38 | 31,000.00 | 10–31–42 | $25,000.00 |
| 10–31–39 | 18,100.00 | 10–31–43 | None |

retain his services for the day when the export market would again be open. Taxpayer's net profit before taxes for the fiscal years ended October 31, 1936, through 1943, is as follows:

years ended October 31, 1943, were as follows:

6. Section 1141(a), Internal Revenue Code, as amended by the Act of June 25, 1948, c. 646, 62 Stat. 869; Rule 52(a),

Federal Rules of Civil Procedure, 28 U.S.C.A.

tional basis in the evidence here for the conclusions arrived at by the Tax Court. Furthermore, its opinion shows that it weighed all the relevant evidence bearing on the subject, including those factors favorable as well as those unfavorable to the taxpayer. And the amounts allowed as reasonable compensation for 1942 and 1943 were upwards of 100% more than the amounts of compensation taxpayer had paid the same persons in 1940.[7]

Turning now to the inventory issue, it appears that at the close of taxpayer's fiscal year ending October 31, 1943, it had on hand 20 piles of resawed lumber, being the waste pieces acquired in cutting large timber to specific sizes. These waste pieces of various widths and lengths were not separated as to size in the piles. This was in accordance with the common practice in the lumber business. At that time it was not feasible to take a physical inventory of the 20 piles of lumber and in accordance with trade practices taxpayer's most experienced lumber inspectors examined the piles of lumber and estimated the footage to be 830,000 board feet. The estimate was accurate as an estimate and the estimated inventory was used by taxpayer in preparing its 1943 tax return. However, prior to the due date of the 1943 tax return the lumber was sold to the Government and the footage by actual count was found to be 896,723 board feet. Taxpayer's use of the smaller of the two inventories, of course, increased the cost of goods sold during the fiscal year 1943 and reduced taxpayer's income from sales.

While we agree with taxpayer that use of an accurate estimated inventory would be proper in a situation where an inventory based on actual count is not feasible or available, we conclude, as did the Tax Court, that there is no justification for use of an estimated inventory when, as here, an inventory by actual count is available to show the error of the estimated inventory and clearly to reflect the taxpayer's income.

The judgment of the Tax Court is affirmed.

7. The Tax Court allowed the following amounts as reasonable compensation:

| EMPLOYEE | YEARS ENDED | | |
| --- | --- | --- | --- |
| | 10-31-41 | 10-31-42 | 10-31-43 |
| Burtis | $15,000.00 | $22,500.00 | $25,000.00 |
| Stubbs | 7,080.00 | 11,250.00 | 12,500.00 |
| Hobbs | 5,100.00 | 9,000.00 | 10,000.00 |
| Albrecht | 5,640.00 | 9,000.00 | 10,000.00 |
| Campodonico | 4,500.00 | 6,000.00 | 7,000.00 |
| Tippin | 5,175.00 | 9,000.00 | 10,000.00 |
| Holloway* | ........ | ........ | 4,250.00 |
| McDavid | 1,500.00 | 1,500.00 | 1,500.00 |

* NOTE: Until July 1, 1943, Holloway was operating a freight brokerage business on his own account. In 1942 he handled petitioner's business on a flat fee of $1,100 per month. The Tax Court allowed the amount claimed for the part of 1943 in which Holloway was an employee of taxpayer.