## MABEE PETROLEUM CORP. v. UNITED STATES.

### No. 14210.

United States Court of Appeals
Fifth Circuit.

April 17, 1953.

2. Rubin Bros. Footwear, Inc. v. N. L. R. B., 5 Cir., 203 F. 486, and cases cited in it at note 3.  t

Benjamin L. Bird, Fort Worth, Tex., Weeks, Bird, Cannon & Appleman, Fort Worth, Tex., of counsel, for appellant.

C. Moxley Featherston, Sp. Asst. to Atty. Gen., Ellis N. Slack, Acting Asst. Atty. Gen., William Cantrell, Jr., Asst. U. S. Atty., Dallas, Tex., Charles S. Lyon, Asst. Atty. Gen., Frank B. Potter, U. S. Atty., Fort Worth, Tex., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and RIVES, Circuit Judges.

RIVES, Circuit Judge.

Appellant, Mabee Petroleum Corporation, claiming exemption under Section 101(6) of the Internal Revenue Code,[1] brought this suit to recover income taxes paid for the years 1948 and 1949.

The questions presented are whether appellant corporation is entitled to the claimed statutory exemption as having been "organized and operated exclusively for religious, charitable, scientific, * * * or educational purposes," within the meaning of the above statute, and whether any part of the appellant's net earnings "inures to the benefit of any private shareholder or individual," in such manner as to disqualify appellant from claiming the exemption.

John E. Mabee, a Texas oil producer and multimillionaire, and his wife, L. E. Mabee, had for many years prior to 1947 been donating substantial sums of money to various charities. In that year they became dissatisfied with the lack of system and organization involved in their contributions, and felt that some of their money had not been wisely expended. They determined to set aside certain oil producing properties to be used exclusively for charitable purposes. Mr. Mabee selected the properties to be devoted to charities from among the holdings of the Mabee Oil & Gas Company, the stock of which corporation was owned by Mr. and Mrs. Mabee. He directed John Donnelly, the office manager, and Logan Stevenson, his attorney, to formulate a "good sound business plan so that we could give this money away to charity", and left the details to them.

The plan devised by Mr. Donnelly and Mr. Stevenson provided for the division of Mabee Oil & Gas Company into two corporations, Mabee Petroleum Corporation, and Mabee Royalties, Inc. Appellant, Mabee Petroleum Corporation, was to receive and operate the properties to be devoted to charities,[2] while Mabee Royalties, Inc. was to receive the remaining properties. The J. E. & L. E. Mabee Foundation, Inc., was to be organized solely as a charitable corporation, and all of the stock and income of Mabee Petroleum Corporation was to be transferred to this Mabee Foundation[3] to be used by it in furtherance of its charitable purposes.

Pursuant to the above plan, appellant corporation and Mabee Royalties, Inc. were organized on September 10, 1947, under the laws of Delaware. Appellant's charter and by-laws were those of the ordinary business corporation organized for profit.[4]

1. Title 26, U.S.C.A. § 101(6) provides:

"The following organizations shall be exempt from taxation under this chapter—

\* \* \* \* \*

"(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, * * *."

2. The evidence shows that the properties designated by Mr. Mabee to be devoted to charity and conveyed to appellant included about sixty oil and gas leases located in seven states on which were located in excess of two hundred producing oil wells.

3. Mr. Stevenson having died in 1950 and Mr. Donnelly having had a stroke just before trial, the evidence does not show why this particular plan was adopted or why the selected properties to be devoted to charity were not transferred directly to the Mabee Foundation.

4. Its certificate of incorporation states that its objects or purposes were to engage generally in the oil and gas business. It had an authorized capital stock of $3,000,000 divided into 30,000 shares of common stock, but only 19,132 shares were issued. Practically all of the stock was issued to Mr. and Mrs. Mabee, with only three qualifying shares to others. The

For income tax purposes appellant adopted a fiscal year ending September 30th.

All oil properties other than those selected by Mr. Mabee for transfer to appellant were transferred to Mabee Royalties, Inc., in accordance with the plan. The stock of that corporation was issued to Mr. and Mrs. Mabee, and Mabee Oil & Gas Company was dissolved on July 20, 1948.[5]

The Mabee Foundation was organized under the laws of Delaware on July 12, 1948.[6] However, the stock of appellant, Mabee Petroleum Corporation, was not transferred to the Mabee Foundation until September 1, 1948.[7] On September 24, 1948, appellant distributed $1,500,000 to the Mabee Foundation, and approximately a year later, on September 30, 1949, it distributed to it another $1,000,000. This $2,500,000 constituted all of the net income of appellant for its fiscal years 1948 and 1949, except possibly J. E. Mabee's salary hereinafter discussed.

Appellant has functioned since its organization solely for the purpose of receiving the selected oil properties, operating them and supplying the Mabee Foundation with funds for its various charities. The undisputed evidence is that appellant has made no attempt to expand its operations or acquire any properties. It has merely produced oil from the properties held for the Mabee Foundation. The Commissioner has ruled that the Mabee Foundation is exempt from income taxes under Section 101(6) of the Internal Revenue Code, footnote 1, supra.[8]

The Mabee attorney, Logan Stevenson, had suggested at a meeting of the directors shortly after appellant's organization that Mr. Mabee be employed at a salary for his services commensurate with his experience and ability and, at that time, he was employed as President and Manager of appellant for fifteen years at an annual salary of $100,000. This salary was paid Mr. Mabee during the years ending September 30, 1948, 1949 and 1950.[9] Accordingly, when the stock of appellant was transferred to the Mabee Foundation on September 1, 1948, the agreement relative to Mr. Mabee's employment and salary with appellant was called to the attention of the trustees of the Foundation. The trustees did not approve the agreement as a salary contract, but at their meeting agreed to accept the stock of appellant as a gift, with Mr. Mabee's salary obligation attached.[10]

directors and officers were J. E. Mabee, President and Treasurer; L. E. Mabee, Vice-President; John W. Donnelly, Vice-President; Guy Mabee, Vice-President; and Logan Stevenson, Secretary.

5. The minutes of the September 22, 1947, meeting of stockholders of Mabee Oil & Gas Company, at which the resolutions to divide Mabee Oil & Gas Company were adopted, recite that accounting and administrative convenience necessitated the corporate split-up and formation of appellant, and contain no reference or clue to appellant's organization as part of a charity plan.

6. The expressed corporate object and purpose of the Mabee Foundation was as follows:
"To aid all Christian religious organizations, charitable organizations, preparatory, vocational and technical schools, institutions of higher learning, and scientific research; to establish, maintain, conduct, assist and endow public charitable, religious, literary, educational, and scientific activities, agencies and institutions, hospitals and other public agencies and institutions engaged in the discovery, treatment and care of diseases and its endowments and funds shall be administered exclusively for such purposes. * * *"

7. Appellant offers as explanation of the delay of approximately one year from the time of its organization on September 10, 1947, until its stock was transferred to the Mabee Foundation on September 1, 1948, the fact that there was an enormous amount of detail involved in the conveyancing and organizing of the various corporations and the dissolution of Mabee Oil and Gas Company. During the above period the stock was held by Mr. and Mrs. Mabee, although no dividends were declared or distributions made to them.

8. This fact was admitted at the trial and is not in issue here.

9. The salary agreement was terminated at the end of 1950.

10. The minutes of the meeting of the trustees on September 1, 1948, at which the

The District Court, in an oral opinion, found as a fact that the $100,000 per annum paid to J. E. Mabee as a salary was unreasonable compensation for his services, that such payments resulted in the inurement of a part of the net earnings of the appellant to him, and that appellant was therefore not entitled under the statute to the exemption claimed.[11] The Court made no specific finding as to whether appellant was organized and operated exclusively for charitable purposes.

Pretermitting the issue of whether appellant was organized and operated exclusively for charitable purposes within the meaning of the statute, we think the District Court correctly held that appellant was not entitled to the statutory exemption because a part of its net earnings inured to the benefit of J. E. Mabee in the guise of salary. The question of whether the salary payments constituted reasonable compensation for his services as president of appellant during the tax years involved was purely a question of fact, to be resolved by the District Court under all the existing circumstances. See Leedy-Glover Realty & Ins. Co. v. Com'r, 5 Cir., 184 F. 2d 833; American Pitch Pine Exp. Co. v. Com'r, 5 Cir., 188 F.2d 721. Considera-

tions of whether this Court might have reached a contrary determination under all the evidence are not controlling where, as here, appellant's evidence is not so compelling in character that we can regard the adverse decision as "clearly erroneous". Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; Burford-Toothaker Tractor Co. v. Commissioner, 5 Cir., 192 F.2d 633, certiorari denied, 343 U.S. 941, 72 S.Ct. 1033; United States v. Yellow Cab Co., 338 U.S. 338, 340–342, 70 S.Ct. 177, 94 L.Ed. 150. Without undertaking to set out all the testimony, we draw attention to relevant factors which strongly support the District Court's holding.

It is without dispute that J. E. Mabee devoted only part of his time to his position as president of appellant. The evidence shows that during the same period he was receiving the salary payments in question, he was connected with at least six or seven other large organizations.[12] He had previously served as president of Mabee Oil & Gas Company without salary, before the assets of that corporation upon reorganization were divided between appellant and Mabee Royalties, Inc. The arrangement whereby the gift of appellant's stock was accepted by the Mabee

gift was accepted contain the following recitation:

"Mr. Donnelly called attention to a salary contract between J. E. Mabee and Mabee Petroleum Corporation, whereby Mabee Petroleum Corporation has agreed to pay J. E. Mabee one hundred thousand dollars a year salary for a period of fifteen years. This was discussed. Decision to accept the gift with the obligation attached, is based on Article 5, Section 7, of the by-laws."

11. In the course of its oral opinion, the Court observed:

"The testimony * * * does disclose that the Foundation did receive two and a half million dollars from the plaintiff, and, that a number of bequests, quite worthy ones, indeed, were made by the Foundation. However, at this same time, Mr. Mabee was receiving one hundred thousand dollars a year. That is a lot of money. And, if we look at that a moment, we must discover that it did not arise, probably, so much from a superlative business ability, but, it did arise from the

hidden gold in the earth of his land, oil, cattle that grazed from the land.

"At the time that he was receiving this one hundred thousand dollars per year out of the plaintiff's earnings, which reduced its net, of course, he was connected with six or seven other different concerns, more than half of which he was president of.

"So that I hold, as a matter of fact, gentlemen, that that one hundred thousand dollars is an unreasonable compensation to be paid to Mr. Mabee, and, that that must tie up, and, did, in all probability, enter into the reason for the compactness of his estates, which were in seven states, and, two hundred oil wells, and, sixty different leases."

12. He was president of Mabee Investments, Inc., Blackstock Oil Company, J. E. Mabee Company, and Braden Winch Company. He also devoted part of his time to Mabee Royalties, Inc., and to Mabee and Pyle & Company, a partnership. He further had a ranch and cattle business in West Texas. He testified that he divided his time among all of his business interests.

Foundation with the obligation to pay the $100,000 annual salary attached supports the inference that the purported salary payments were not intended merely to compensate him for services to be rendered, but were really authorized to assure him substantial distributions of appellant's annual net earnings in the form of salary. We think it doubtful whether comparable services would have cost as much had they been acquired in an arms-length transaction from an outside source. Moreover, in fixing the salary for a fifteen-year period, no consideration was given to possible future changes in oil prices or general business conditions. J. E. Mabee was admittedly 67 or 68 years of age when the disputed salary payments were authorized, and he was thereby assured $100,000 per year until he was 82.

Appellant argues that tax-avoidance was no motive in voting the salary payments, and states that if such considerations had been paramount any number of more effective plans tax-wise could have been legitimately adopted. While we expressly disavow any intimation of bad faith or tax-avoidance motives on the part of J. E. Mabee and his associates in devising the salary plan in question, we nevertheless cannot say under the circumstances of this case that the finding of the District Court as to the unreasonableness of the salary was "clearly erroneous". Rule 52(a), Federal Rules of Civil Procedure, Burford-Toothaker Tractor Co. v. Commissioner, supra.

■ We concede the logic of appellant's argument that the payment of reasonable salaries to corporate officers does not constitute inurement of net corporate income to the recipient within the meaning of Section 101(6), supra. In Home Oil Mill v. Willingham, D.C., 68 F.Supp. 525, 529, cited and relied upon by taxpayer in brief, the District Court specifically found the salary payments in question "to be reasonable and a fair compensation and salary * * * for actual services performed * * *." See also Willingham v. Home Oil Mill, 5 Cir., 181 F.2d 9, certiorari denied 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed.

624. The clear implication of such decisions, however, is that if the salaries involved had been found excessive and unreasonable an inurement of corporate net income would have resulted so as to disentitle the organization to the claimed exemption. The familiar principle that corporate net earnings may not be channeled to officers in the form of excessive and unreasonable salaries is too well settled to require citation of authority.

■ Regardless of whether the District Court's observation that "there must be a strict construction of such exempt legislation" was appropriate or applicable here, it cannot affect the finding as to the unreasonableness of the salary payments in question, on which basis the claimed exemption was disallowed. "Even the most liberal of constructions does not mean that statutory words and phrases are to be given unusual or tortured meanings unjustified by legislative intent or that express limitations on such an exemption are to be ignored." Better Business Bureau v. United States, 326 U.S. 279, 283, 66 S.Ct. 112, 114, 90 L.Ed. 67.

■ Finally, appellant argues that the payment of money as a condition to the acquisition of properties does not result in the inurement of net earnings, in contravention of the statute. See Lederer v. Stockton, 260 U.S. 3, 43 S.Ct. 5, 67 L.Ed. 99. If sound, this contention would furnish a ready means of avoiding the statutory requirement, that no part of the net earnings of the charitable corporation inure to the benefit of a private individual. However, appellant and the Mabee Foundation were separate corporate entities, and we think it clear that the transfer of appellant's stock, subject to the salary contract entered into by appellant corporation with J. E. Mabee, did not qualify appellant for exemption. See Universal Oil Products Co. v. Campbell, 7 Cir., 181 F.2d 451, certiorari denied 340 U.S. 850, 71 S.Ct. 78, 95 L.Ed. 623; Bear Gulch Water Co. v. Commissioner, 9 Cir., 116 F.2d 975, certiorari denied, 314 U.S. 652, 62 S.Ct. 99, 86 L.Ed. 523; Sun-Herald Corp. v. Duggan, 4 Cir., 160 F.2d 475.

Having failed to satisfy one of the specific requirements of Section 101(6) of the Code, footnote 1, supra, appellant is not entitled to the exemption claimed.

Affirmed.

HOLMES, Circuit Judge (dissenting).

We have here no evidence of fraud, intent to evade taxes, or desire for private advantage, on the part of these philanthropists. The evidence indicates clearly that the salary of $100,000 per year to the recipient merely added ordinary income to an already high-bracketed return, resulting in very little benefit to the taxpayer, the government being the greatest beneficiary. Commensurate with his experience in the particular field, the size, value, and extent of the properties under his management, and the other circumstances, the salary paid to Mr. Mabee is not unreasonable. As pointed out in appellant's brief, if the Mabees had desired to profit personally by the plan, there were several other methods whereby they could have done so without question.

The payment of reasonable salaries does not defeat the exemption of an otherwise charitable organization. Willingham v. Home Oil Mill, 5 Cir., 181 F.2d 9, certiorari denied, 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624; Home Oil Mill v. Willingham, D.C., 68 F.Supp. 525; Sand Springs Home, 6 B.T.A. 198. Moreover, these salary payments were obligations assumed in the acquisition of the trust property. Lederer v. Stockton, 260 U.S. 3, 43 S.Ct. 5, 67 L.Ed. 99, affirming 3 Cir., 266 F. 676; Commissioner of Internal Revenue v. Orton, 6 Cir., 173 F.2d 483, affirming Ceramic Foundation, 9 T.C. 533; 40 B.T.A. 555, wherein the Board of Tax Appeals said:

"Petitioner's only activity during the taxable years which was not strictly of a charitable or educational character was the payment of the allowance to the decedent's widow and the educational expenses of her nieces and nephews. We do not think that that alone defeats its classification as an exempt corporation under the statute.

"The payment of these amounts was merely incidental to and was a means of furthering the charitable and educational purposes for which the petitioner was organized. It was in no sense a part of its corporate activities. The payments made to the widow and nieces and nephews were a charge not upon the petitioner's net earnings but against the entire corpus of the residuary estate."

It is true that exemptions from taxation generally must be strictly construed, but this means that doubtful laws must be strictly construed. It does not mean, where the law is a liberalization in favor of the taxpayer and clearly applicable, that it should be technically administered to thwart a benevolent purpose because of a mistake of judgment by trustees as to the reasonableness of the salary of one employee in a vast enterprise. This single item, which was terminated at the end of three years, was a bagatelle to the man who received it in one hand and with the other dispensed millions to aid his fellow man in religious, scientific, and educational activities, and to relieve human suffering in the treatment of diseases. Roche's Beach, Inc. v. Commissioner, 2 Cir., 96 F.2d 776.

I would reverse the judgment appealed from and render judgment here for the appellant.