FRANCIS EDWARD McGILLICK FOUNDATION, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent (two cases).

F. E. McGILLICK COMPANY, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent (two cases).

Nos. 12941–12944.

United States Court of Appeals
Third Circuit.

Argued Nov. 19, 1959.

Decided May 26, 1960.

Kenneth P. Simon, Pittsburgh, Pa. (William Wallace Booth, Walter T. McGough, Reed, Smith, Shaw & McClay, on the brief), for petitioners.

Morton K. Rothschild, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before BIGGS, Chief Judge, and GOODRICH and McLAUGHLIN, Circuit Judges.

BIGGS, Chief Judge.

These cases present extraordinary circimstances. McGillick was the president of the petitioner, F. E. McGillick Company. McGillick and his first wife, Margaret, owned all or approximately all of the stock of the Company. The petitioner, the Francis Edward McGillick Foundation, is a trust created under the laws of Pennsylvania by an indenture executed on January 6, 1937. The indenture provided that the trustees of the Foundation should accept the trust subject to McGillick's "Last Will and Testament". The Will is written into the indenture as an integral part thereof. At the time of the hearing before the Tax Court in 1956 McGillick was still alive and was over ninety years old. The Will therefore on this record is still ambulatory. The Will contains the usual provisions for the payment of funeral expenses and next sets up five specific bequests to members of McGillick's family. It then provides that all the rest, residue and remainder of McGillick's estate is be-

queathed to his Executors, in trust, who are designated as Managers of the Foundation and who are to pay annuities of $1,500 to each of McGillick's four children and to his first wife, Margaret, and also to pay an annuity of $400 to his sister and an annuity of $100 to his brother.[1] Then comes the following declaration: "Whereas it is my desire to devote a substantial portion of my estate to charitable and educational uses and purposes now, therefore, to these ends, I do hereby create and establish the Francis Edward McGillick Foundation".[2] The Will then provides that the executors shall set up a "charitable and educational corporation" to "carry on the objects, uses and purposes" of the trust and that the trust property shall be conveyed to this corporation.

The Will then states, "upon the creation and organization of such corporation, I empower my Executors to convey, transfer and deliver to said Corporation, monies, property or assets to provide for the two special funds created in paragraphs 16, 17, and 18 [3] of this my Will, and to convey, transfer and deliver to said Corporation, at such other times as in their discretion they may deem advisable, property and assets belonging to me and to which the said Francis Edward McGillick Foundation may be or become entitled. In case any of my bequests should fall leaving any funds not herein provided for, the same shall go to the Foundation, for such charitable, educational and public uses and objects and purposes as the said Managers of the Francis Edward McGillick Foundation from time to time shall appoint, order and direct in conformity with my wishes hereinafter set forth."

In the indenture there are no words other than those set out in the last sentence of the quotation which state a general religious, charitable or educational purpose for the Foundation. Unless a general religious, charitable or educational purpose can be spelled out from the last sentence quoted above there was no general dedication of McGillick's estate by him to religious, charitable or educational purposes. The inartistic way in which the indenture and the Will are drawn would suggest that the omission of an explicit general dedication was perhaps inadvertent.

After the Foundation was created, property valued at at least $1,133,000 was conveyed to it by McGillick or his agents. On March 15, 1951, the Foundation applied for a ruling exempting it from federal taxation under the provisions of Section 101(6), Internal Revenue Code of 1939, 26 U.S.C.A. § 101(6). On October 3, 1952, the Commissioner of Internal Revenue ruled that the Foundation was neither organized nor operated exclusively for purposes within the meaning and intent of Section 101(6). After receiving this ruling the Foundation requested reconsideration of the application. On June 12, 1953, the Treasury Department affirmed the original ruling.

The only tax returns filed by the Foundation from 1937 through 1952 were those filed in 1950 on Form 990, and those filed in 1951 and 1952 on Form 990-A, Return of Organization Exempt from Tax, under Section 101(6), Internal Revenue Code of 1939. On these returns the Foundation stated that the nature of its activities was the "Rental and sales of real estate". The McGillick Company, prior to 1950, filed corporate income tax returns with the Collector of Internal Revenue but for the years 1950 up to and including 1952, it filed no such returns and paid no income taxes. However, the Company was designated as a "feeder" corporation on the 990 Form filed by the

1. It appears that by the year 1950 his first wife, sister, and brother had died.

2. This is the first explicit statement as to the establishment of the Foundation, though prior language in the indenture in effect treats the Foundation as if already established.

3. The paragraphs of the Will referred to in the quotation above referring to "two special funds created in paragraphs 16, 17 and 18. * * *" of the Will, refer to specific bequests to charitable or religious organizations, as do other paragraphs of the Will.

Foundation in 1950 and the 990–A Forms filed by the Foundation in 1951 and 1952, and the Company's asset position, gross income, deductions and net income were separately listed on those Forms. Both the Foundation and the Company had income in the years for which the Commissioner assessed income taxes, with penalties for willful failure to file returns, against both the Company and the Foundation. Both the Company and the Foundation sought relief from the Tax Court which decided the issues with which we are presently concerned against the taxpayers. After making certain adjustments the Tax Court upheld deficiencies and penalties against the McGillick Company for the calendar years 1950, 1951, and 1952 in the amounts of $2,125.80, $9,121.38, and $25,592.49, respectively, and against the Foundation for the calendar years 1949, 1951, and 1952 in the amounts of $101,469.14, $22,836.65, and $5,057.30. 30 T.C. 1130. The petitions for review followed.

The Will of McGillick, an integral part of the indenture, was, as we have stated, ambulatory at the time the indenture creating the Foundation was executed by McGillick on January 6, 1937, and insofar as the present record shows the Will is still ambulatory though McGillick may have executed another Will or other Wills. Faced with this anomaly we construe the provisions of the Will as if they were specific gifts given by McGillick *inter vivos* to the trustees for designated beneficiaries.

█ The indenture with the Will included as an integral part of it was construed by the Orphans' Court of Allegheny County. That court held: "The entire estate embraced by the deed of trust of January 6, 1937, is committed irrevocably by the settlor to the charitable uses therein provided, subject only to the payment of expenses, charges, legacies and annuities which he has directed. The proper distribution of the income and principal of this trust to the charitable beneficiaries named in the trust instrument may only be made after the settlor's death and after the other charges against the fund have been paid or provided for." [4]

We are bound by this determination of the Orphans' Court of Allegheny County as to the existence and extent of the trust. Blair v. Commissioner, 1937, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Spiva v. Commissioner, 1941, 43 B.T.A. 1174.

The Foundation asserts that its income is not taxable because it is a charitable corporation within the purview of Section 101(6),[5] Internal Revenue Code of 1939, and if it cannot attain the harbor of non-taxability under the provisions of that section that it is entitled to deduct all or substantially all of its income under Section 162(a) of the 1939 Code, 26 U.S.C.A. § 162(a).

We will discuss now the Foundation's contention based on Section 101(6). Judicial interpretation has put a gloss on the provisions of the statute and it has been held in substance, despite the express provisions of Section 101(6) to the contrary, that where the predominant purpose for which a foundation is organized is "in its broadest sense" religious, charitable or educational, the foundation is entitled to income-tax exemption under the section cited even though some of its funds are to be used for non-charitable purposes. This is the substance of the ruling of the Supreme Court in Lederer

---

4. See In re McGillick's Foundation, 1958, 106 Pittsb.Leg.J. 173.

5. "§ 101. Exemptions from tax on corporations * * * the following organizations shall be exempt from taxation under this chapter— * * *

"(6) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation; * * *."

v. Stockton, 1922, 260 U.S. 3, 8, 43 S.Ct. 5, 67 L.Ed. 99.[6] See also William L. Powell Foundation v. Commissioner, 7 Cir., 1955, 222 F.2d 68, 73–74; Commissioner of Internal Revenue v. Orton, 6 Cir., 1949, 173 F.2d 483, affirming Edward Orton, Jr. Ceramic Foundation, 1947, 9 T.C. 533, and Emerit E. Baker, Inc. v. Commissioner, 1939, 40 B.T.A. 555.

In respect to the application to the Foundation's case of the "predominant purpose" or "prior charge" doctrine, as it is sometimes termed, we are troubled by the fact that the Foundation stated the nature of its activities as those of a rental or sales agent for real estate on the 990 and 990–A Forms filed with the Internal Revenue Service, but this naive declaration seems belied by the terms of the indenture and the determination by the Orphans' Court of Allegheny County that the estate embraced by the indenture was committed irrevocably to charitable purposes. We are also troubled by the fact that McGillick also stated that a "substantial portion" of his estate should be devoted to religious, charitable and educational purposes for the term "substantial" does not mean the greatest part or even a very great portion of an estate.[7] But this fact is more than offset by the unequivocal declaration of the Orphans' Court of Allegheny County that the fund of over $1,300,000 is irrevocably committed to religious, charitable and educational purposes.

■ We would have little hesitancy in applying "the predominant purpose" doctrine if it could be said with a certainty absolute that a very great portion of the corpus of the trust would be available for religious, charitable and educational purposes. While certainty is not present the amount of the specific bequests required to be paid under the indenture on McGillick's death is very small compared to the $1,300,000 which was irrevocably committed to the trust prior to the time the cases were tried and if nothing more be received from McGillick's estate on his death there would seem to be a very high degree of probability that a very great portion of the corpus of the trust will be available for religious, charitable and educational purposes. This is a fact of which we think both the court below and this court may take cognizance. The use of probabilities in ascertaining the existence and value of present interest is well known to the tax law. It is conceivable that the $1,300,000 could so shrink, by reason of the viscissitudes of market or bad management, that the small specific bequests might engulf the sum presently available, leaving little or nothing for religious, charitable or educational purposes. The Tax Court did not inquire into this possibility or make any ruling respecting it but such diminution of the trust res is grossly improbable. Moreover, in cases where organizations alleged to be tax-exempt under Section 101(6) have both charitable and noncharitable beneficiaries, the resolution of the issue of taxability does not seem to depend on the specific amount available for religious, charitable or educational purposes, but rather on the intent of the grantor that substantial funds be held in trust for such purposes plus the fact that all tax benefits accrue to the organization's charitable beneficiaries. If we rule that the Foundation is to be accorded tax-free status, the religious, charitable and educational beneficiaries of the Foundation will receive, unreduced by income

---

6. Mr. Chief Justice Taft stated, 260 U.S. at page 8, 43 S.Ct. at page 5: "This residuary fund was vested in the Hospital. The death of the annuitant would completely end the trust. For this reason, the trustee was able safely to make the arrangement by which the Hospital has really received the benefit of the income subject to the annuity. As the Hospital is admitted to be a corporation, whose income when received is exempted from taxation under section 11(a), we see no reason why the exemption should not be given effect under the circumstances. To allow the technical formality of the trust, which does not prevent the Hospital from really enjoying the income would be to defeat the beneficent purpose of Congress."

7. See Webster New International Dictionary, 3rd Ed.

tax payments, all income earned by the Foundation above the amounts necessary to pay the specific bequests and the private beneficiaries in the case at bar will not and cannot receive tax benefits. Such a result will, we think, carry out the intent of Congress. We hold therefore that the Foundation is entitled to nontaxable status within the purview of Section 101(6).

Since we have found that the Foundation qualifies under Section 101(6) we need not discuss the applicability of Section 162(a).

The next issue presented for determination is whether the twenty-five percent penalties were properly imposed under Section 291(a) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 291(a), against the McGillick Company for failure to file income tax returns for the years 1950, 1951, and 1952.[8] An examination of the returns for the years in question shows the following: Form 990 or Form 990–A, the latter form being used in the two later years, entitled on the first page of each return, "Francis Edward McGillick Foundation" and signed by McGillick as President and by Louise Schultz, later Louise Schultz McGillick, as Treasurer, were filed with the Collector. Information relating to the Foundation was presented in the form of a "Balance Sheet" and an "Income Profit and Loss Account". Included physically within each of the Form 990 or Form 990–A returns, in each instance, were two sheets inscribed "F. E. McGillick Company", one sheet showing a "Balance Sheet" and the other sheet showing a column of figures designated "Reconciliation of Net Income and Analysis of Surplus and Undivided Profits". At the bottom of each of the latter sheets is a "Note" which states: "The F. E. McGillick Company is a wholly owned subsidiary of the Francis Edward McGillick Foundation, a Religious, Charitable and Educational Common Law Trust, created under the Laws of the Commonwealth of Pennsylvania, by Agreement dated Janu-

ary 6, 1937." Page 4 of Form 990 filed for the year 1950 immediately following the sheets relating to the income of McGillick Company is also signed by McGillick and by the then Miss Schultz, as President and Treasurer, respectively. The 1951 and the 1952 returns are signed but once by McGillick and Schultz as President and Treasurer, respectively, and these signatures seemingly are appended to the Foundation return. Otherwise the returns for the years 1951 and 1952 *mutatis mutandis* are the same as the return for the year 1950. It will be borne in mind that McGillick and Schultz were not only President and Treasurer of the Foundation but were also President and Treasurer of McGillick Company.

█ If we read this confused record right, it would seem, however inartistic the presentation of the facts relating to and representing the income and financial position of the McGillick Company may be, that there were some kind of returns which demonstrated taxable income due the United States from McGillick Company for the years in question. McGillick Company concedes that it is not a "feeder" or a corporation organized for religious, charitable or educational purposes, but insists, nevertheless, that the Forms which they filed were sufficient to bring McGillick Company within the purview of Germantown Trust Co. v. Commissioner, 1940, 309 U.S. 304, 60 S.Ct. 566, 84 L.Ed. 770.

The Tax Court in imposing the penalty upon McGillick Company relies on Automobile Club of Michigan v. Commissioner, 1957, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746, and asserts that that decision compels us to hold that an organization which has filed a Form 990 or a Form 990–A return rather than a return on the regularly required income tax form has not filed a tax return which can satisfy the requirements of Sections 275 (a) and 276(b), Internal Revenue Code of 1939, 26 U.S.C.A. §§ 275(a), 276(b). In the Automobile Club case the question

---

8. Our ruling in respect to the Foundation, of course, eliminates the issue of the penalties assessed against it.

was whether the submission of a 990 Form would constitute a return which would start the running of the applicable statute of limitations against the United States. The Court stated, 353 U.S. at page 188, 77 S.Ct. at page 712: "But the Form 990 returns are merely information returns in furtherance of a congressional program to secure information useful in a determination whether legislation should be enacted to subject to taxation certain tax-exempt corporations competing with taxable corporations. Those returns lack the data necessary for the computation and assessment of deficiencies and are not therefore tax returns within the contemplation of § 275(a)." Cf. Germantown Trust Co. v. Commissioner, supra.

The situation at bar is further complicated by the fact that a Form 990 return was made for the year 1950 and Form 990–A was employed for the returns for years 1951 and 1952. The two forms, however, are so similar in their essential aspects that no valid argument can be made respecting differences between them. The issue before us is, of course, not exactly the same as that which was before the Supreme Court in the Automobile Club case but, nevertheless, we think that decision controls this case. We conclude, therefore, that the filing on Form 990 and the filings on Forms 990–A are insufficient to relieve the McGillick Company of the penalties. Moreover, adverting to the specific language of the statute, we cannot hold that the failure to make the returns on the Forms required by law as "due to reasonable cause and not due to willful neglect". Accordingly we sustain the decision of the Tax Court upon this issue.

The sum of $6,000 per annum for the value of McGillick's services to McGillick Company for the calendar years 1948 and 1949 fixed by the Commissioner and sustained by the Tax Court is not clearly erroneous and therefore we affirm the Tax Court on this issue.

We must also decide whether the Tax Court was justified in denying a motion by the petitioners to reopen the proceedings before it. Such motions lie within the broad discretion of the trial court and ordinarily an appellate tribunal will not reverse such a ruling in the absence of extraordinary circumstances. Woodbury v. Commissioner, 3 Cir., 1956, 231 F.2d 121, but compare Lind v. Schenley Industries, Inc. 3 Cir., 1960, 278 F.2d 79. We can perceive nothing of such consequence here as would cause us to remand the cases to the Tax Court for reopening the record.

The decision of the Tax Court as to the Foundation will be reversed. The decision as to McGillick Company will be affirmed.